<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YOUNG CHO, Individually and as Representative of a Class of Similarly Situated Persons, and on Behalf of the PRUDENTIAL EMPLOYEE SAVINGS 401(k) PLAN, | Civil Action No. 19-19886 (JMV) (SCM) |
| *Plaintiff*, | |
| v. | <u>**OPINION**</u> |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL ADMINISTRATIVE COMMITTEE, PRUDENTIAL INVESTMENT OVERSIGHT COMMITTEE, BELLWETHER CONSULTING LLC, LUCIEN ALZIARI, SARA BONESTEEL, ELLEN BORAK, TINA CAWLEY, THOMAS LAURITA, PATRICK LYNCH, JOSEPH MACHEWIRTH, LYNN MCTAGGART, GARY NEUBECK, KEVIN PRUE, SCOTT RAMSAY, SCOTT SLEYSTER, and SHARON TAYLOR, | |
| *Defendants*. | |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This putative class action, brought under the Employee Retirement Income Security Act ("ERISA"), arises out of allegations that fiduciaries of the Prudential Employee Savings Plan (the "Plan") breached their duties of prudence and loyalty, engaged in prohibited transactions, and breached their monitoring duties. Presently before the Court are Defendants' motions to dismiss Plaintiff's Amended Complaint. The Court reviewed all the submissions in support and in

opposition[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below, Defendants' motions to dismiss are **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   BACKGROUND[2]

Plaintiff, Young Cho, brings this action on behalf of himself and all participants and beneficiaries in the Plan at any time on or after November 5, 2013 to the present (the "Class Period").  AC ¶ 109.  Defendants include the Prudential Insurance Company of America ("Prudential"), the Prudential Administrative Committee ("Administrative Committee"), the Prudential Investment Oversight Committee ("Investment Oversight Committee," together with Prudential and the Administrative Committee, "Prudential Defendants") and Bellwether Consulting LLC ("Bellwether").  *Id.* ¶ 2.  Prudential is a "plan sponsor" pursuant to 29 U.S.C. § 1002(16)(B), which means that Prudential is also a "party of interest."  *Id.* ¶ 21.  All Defendants are considered "named fiduciaries" of the Plan pursuant to 29 U.S.C. § 1102(a)(2).  *Id.* ¶ 2.

The Administrative Committee oversaw "the operation and administration of the Plan." *Id.* ¶ 22.  The Administrative Committee included at least three employees selected and "led by a chairperson who is appointed by the Senior Vice President."  *Id.* ¶ 22.  Named defendants Ellen Borak, Tina Cawley, Thomas Laurita, Patrick Lynch, Joseph Machewirth, Lynn McTaggart, Kevin Prue and Scott Ramsay are current or former members of the Administrative Committee.  *Id.* ¶ 26-

---

[1] Prudential Defendants' and Individual Defendants' moving brief will be referred to as "Prudential Br.," D.E. 73-1.  Plaintiff's brief in opposition to the Prudential Defendants' and Individual Defendants' moving brief will be referred to as "Opp. to Prudential Br.," D.E. 77.  Prudential Defendants' and Individual Defendants' reply brief will be referred to as "Prudential Reply," D.E. 81.  Defendant Bellwether's moving brief will be referred to as "Bellwether Br.," D.E. 74-1.

[2] The factual background is taken from the Amended Complaint ("AC"), D.E. 53.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

31, 33-34.  The Investment Oversight Committee was composed of at least three employees selected "by the Prudential Investment Committee of Prudential's Board of Directors."  *Id.* ¶ 23. The role of the Investment Oversight Committee was "to assist Prudential with the selection of investment funds offered for selection by Plan participants."  *Id.* ¶ 23.  Named Defendants Lucien Alziari, Sara Bonesteel, Gary Neubeck, Scott Sleyster and Sharon Taylor are current or former members of this committee (together with the above-listed named defendants from the Administrative Committee, the "Individual Defendants").  *Id.* ¶ 24-25, 32, 35-36.  Bellwether is headquartered in Millburn, New Jersey.  *Id.* ¶ 37.  Throughout the Class Period, Bellwether "was responsible for ensuring that the investments included in the Plan were prudent."  *Id.* ¶ 39.

Plaintiff was employed by Prudential until May 2018 and participated in the Plan until March 20, 2019.  *Id.* ¶ 19.  The Plan was an "employee pension benefit plan" and a "defined contribution plan" in accordance with the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(34).  *Id.* ¶ 20.  The Plan, also called a "401(k)" plan, "serves as a vehicle for retirement savings and to produce retirement income for employees of Prudential."  *Id.* ¶¶ 20, 40.  The Plan is "established and maintained . . . in accordance with 29 U.S.C. § 1102."  *Id.* ¶ 40.  It operates as a participant-directed plan; participants choose from "a pre-selected menu of investment offerings consisting of several types of investments."  *Id.* ¶ 41.  "As of December 31, 2018, the Plan offered the following types of investment options: mutual funds, separately managed accounts, Prudential Financial, Inc. common stock, collective investment trusts, guaranteed retirement income products and a fixed rate fund structured as a group annuity contract."  *Id.* ¶ 43.

Plaintiff alleges that Defendants breached their fiduciary duties outlined in 29 U.S.C. § 1104 "by failing to act solely in the interest of the Plan and its participants and beneficiaries" as well as by "failing to exercise the required care, skill, prudence, and diligence in investing the

assets of the Plan and disclosing the fees charged to the participants." *Id.* ¶ 67. Specifically, Plaintiff claims that Defendants breached their fiduciary duties by offering investment options "with excessively high expense ratios" compared to "alternatives readily available in the marketplace," *id.* ¶ 71, and by selecting and retaining multiple underperforming fund options, *id.* ¶ 85. Plaintiff also alleges that "at least half of the funds offered to participants were Prudential-affiliated funds, which provided millions of dollars of revenue for Prudential and its affiliates and subsidiaries." *Id.* ¶ 103. According to Plaintiff, Defendants' excessive use of Prudential-affiliated funds breached their fiduciary duties because a "prudent fiduciar[y] would have investigated alternative available investments in order to maximize the Plan's retirement assets in the interest of the participants." *Id.* ¶ 106.

Plaintiff further claims that Defendants violated ERISA through their use of GoalMaker, an optional asset allocation tool designed to "allocate[] a participant's retirement funds among certain Plan investment options according to the participant's age and risk tolerance." *Id.* ¶ 95. Specifically, Plaintiff claims that GoalMaker advanced Defendants' interests by "disproportionately allocating participant funds to investments managed by Prudential or its affiliates." *Id.* ¶ 96. Plaintiff continues that Defendants violated ERISA because the Plan's online portal contained "significant amounts of erroneous data that render it difficult for participants to make investment elections." *Id.* ¶ 108.

Plaintiff also alleges that Defendants violated 29 U.S.C. §§ 1106 by "causing the Plan to invest in Prudential-affiliated funds and purchase investment management and other products and services, including recordkeeping services, from Prudential subsidiaries and affiliates." *Id.* ¶ 68. According to Plaintiff, the Plan's investments in Prudential funds and its payment of fees to

Prudential and its affiliates constituted prohibited transactions under 29 U.S.C. §§ 1106(a) and (b). *Id.* ¶¶ 66, 127, 131-32.

Finally, Plaintiff asserts that the Prudential Defendants had the obligation to "monitor the performance of the Committees, the Individual Defendants and Bellwether" but failed to do so properly in breach of their fiduciary duty to monitor.  *Id.* ¶ 137.  This led to Plan participants "los[ing] millions of dollars in retirement savings."  *Id.* ¶ 141.

Plaintiff filed his Amended Complaint on September 17, 2020.  D.E. 53.  The Complaint contains five counts.  Count I alleges that Defendants breached their fiduciary duties of prudence and loyalty.  *Id.* ¶¶ 119-22.  Counts II and III allege that Defendants engaged in prohibited transactions with a party-in-interest and fiduciaries.  *Id.* ¶¶ 123-34.  Count IV alleges that the Prudential Defendants failed to monitor fiduciaries.  *Id.* ¶¶ 135-42.  Count V pleads in the alternative that, to the extent any Defendants are not deemed a fiduciary or co-fiduciary under ERISA, any such Defendants are liable for a knowing breach of trust.  *Id.* ¶¶ 143-45.  The current motions followed.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Defendants first move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and argue that Plaintiff lacks standing.  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint.  A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  *Davis v. Wells Fargo*, 824 F.3d 333,

346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'"  *Id.* at 346 (quoting *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  "When a factual challenge is made, the plaintiff will have the burden of proof that jurisdiction does in fact exist, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.* (internal citations omitted).

Here, Defendants first argue that Plaintiff's allegations are insufficient to establish standing to challenge the GoalMaker program and allegedly inaccurate information posted on the Plan's online portal.  Prudential Br. at 14-15.  These arguments constitute a facial attack, and accordingly, "the Court must consider the allegations of the complaint as true" with regard to the above claims.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  However, in support of their additional argument that Plaintiff lacks standing to challenge funds in which he was not personally invested, Defendants submit a document showing Plaintiff's Plan investments.  *See* Prudential Br. at 16; Exhibit 14 to the Declaration of Amanda S. Amert, D.E. 73-2.  Thus, Defendants mount a factual attack on Plaintiff's standing to bring such claims, and this Court may consider the evidence submitted in support of such attack.

**B.  Rule 12(b)(6)**

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content

"that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.   ANALYSIS

### A.  Article III Standing

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2.  To meet the case-or-controversy requirement, a plaintiff must show that he has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the

injury will be redressed by a favorable decision."' *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358-59 (3d Cir. 2015)). An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1. A concrete injury refers to one that actually exists: one that is real and not abstract. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). In addition, "[t]he injury must be concrete in both a qualitative and temporal sense[.]" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Defendants argue that Plaintiff lacks standing to assert claims related to the funds in which he never invested because he suffered no injury from those funds.[3] Prudential Br. at 15-17. Defendants further argue that Plaintiff lacks standing to assert claims relating to GoalMaker, an investment tool that Plaintiff does not allege that he ever used, and claims relating to allegedly inaccurate information provided on the Plan's online portal after Plaintiff's Plan participation ended. *Id.* at 14-15. Defendants reason that because Plaintiff did not personally participate in GoalMaker or in the Plan at the time the alleged misinformation occurred, he suffered no concrete and personal injury. *Id.* Plaintiff does not dispute that he did not personally participate in certain

---

[3] Plaintiff states that the Plan contains twenty-one funds and challenges nine of those funds as imprudent. AC ¶¶ 72-94. Defendants contend that Plaintiff participated in only four of the nine challenged funds and submit as support a redacted copy of Plaintiff's Plan statement, dated December 31, 2018. Prudential Br. at 16; D.E. 73-2, Ex. 14. The Amended Complaint does not specify which of the challenged funds Plaintiff invested in, but in any case, Plaintiff does not dispute that he did not personally invest in all of the challenged funds, and this Court may consider Plaintiff's Plan statement. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (in evaluating a motion to dismiss, courts may consider documents "attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case"). Here, Plaintiff's investments are integral to his pleading.

Plan funds and features but contends that he has standing to challenge those aspects of the Plan regardless.  Opp. to Prudential Br. at 12-16.

Plaintiff has standing to assert claims related to the funds in which he did not personally invest.  In *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019), the Third Circuit considered whether the plaintiffs had standing to bring a suit on behalf of plan participants where the plaintiffs failed to allege that they had invested in the plan tiers containing most of the underperforming plan options.  *See id.* at 334 n.10 (citing *Perelman v. Perelman*, 793 F.3d 368, 376 n.6 (3d Cir. 2015)).  The Third Circuit found that because the plaintiffs had invested in certain underperforming options during the proposed class period, they had sufficiently plead individual injuries and thus had standing.  *Id*.

Here, Defendants concede that Plaintiff invested in certain of the challenged funds, Prudential Br. at 16, and Plaintiff has alleged that he was a Plan participant and suffered losses as a result of Defendants' management of the Plan.  AC ¶¶ 19, 121.  Accordingly, Plaintiff has alleged an injury and has standing to challenge even those funds in which he did not personally invest. *Sweda*, 923 F.3d at 334 n.10; *see also McGowan v. Barnabas Health, Inc*., No. 20-13119, 2021 WL 1399870, at *4-5 (D.N.J. Apr. 13, 2021) (finding that the plaintiffs had standing to challenge the funds in which they did not invest because they alleged an injury to their own investments resulting from the plan's mismanagement); *Hay v. Gucci Am., Inc*., No. 2:17-cv-07148, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) (finding that the plaintiff had standing to bring ERISA claims challenging plan funds in which she did not invest because she pled that she was subject to excessive fees and underperformance as a result of the defendants' mismanagement, which constituted an injury rooted in the defendants' conduct in managing the funds as a group).

Defendants cite to *Thole v. U.S. Bank N.A.*, -- U.S. --, 140 S. Ct. 1615, 1620-21 (2020) for the proposition that an ERISA plaintiff must "plausibly and clearly allege a concrete injury" in order to establish Article III standing.  Prudential Br. at 16; Prudential Reply at 3.  While a plaintiff must have Article III standing to bring an ERISA claim, *Thole* is inapposite.  Unlike the Plan at issue here, the relevant retirement plan in *Thole* was a defined-benefit plan for which payments to the plan participants "do not fluctuate with the value of the plan or because the plan fiduciaries' good or bad investment decisions"; this defined-benefit plan structure was "[o]f decisive importance." *Thole*, 140 S. Ct. at 1618.  Moreover, "*Thole* suggests . . . that a plaintiff has standing to sue on behalf of the Plan, even if that particular plaintiff was not invested in each one of the Plan's investment vehicles." *McGowan*, 2021 WL 1399870, at *4.  Indeed, since *Thole*, courts "have generally rejected the argument that a plaintiff's ERISA challenge must be confined to the individual funds in which he or she invested." *Id.* (citing district court cases).  Accordingly, *Thole* does not require a different outcome.

Nevertheless, the Court has concerns about Plaintiff's standing to challenge the GoalMaker program in which he did not participate and the allegedly inaccurate information provided to Plan participants *after* Plaintiff's Plan participation had ended.  Plaintiff alleges that the Plan's online participant portal contained "significant amounts of erroneous data that render it difficult for participants to make investment elections."  AC ¶ 108.  The Amended Complaint states that this allegedly erroneous information was provided starting in January 2020, *id.*, but Plaintiff's Plan participation ended on March 20, 2019, *id.* ¶ 19.  Plaintiff also brings claims relating to GoalMaker, an optional asset allocation tool in which Plan participants could elect to participate, AC ¶ 95, and which was managed by Mesirow, an independent consultant unaffiliated with Prudential.

Prudential Br. at 21-22; D.E. 73-2, Ex. 5 at 24.[4]  Plaintiff does not allege that he participated in the GoalMaker program.

While Plaintiff's alleged injury from investing in some but not all of the challenged funds creates standing to challenge Defendants' alleged mismanagement of the Plan's funds as a whole, the same cannot be said as to a claim concerning misinformation published after Plaintiff had ceased being a Plan participant.  At a minimum, Plaintiff has not provided authority which extends constitutional standing to such situations.  Likewise, Plaintiff has failed to cite authority that would support standing as to GoalMaker, an optional tool which Plaintiff did not use and which was not managed by Defendants.[5]  *But see Rosen v. Prudential Retirement Insurance and Annuity Co.*, No. 3:15-cv-1839, 2016 WL 7494320, at *13 (D. Conn. Dec. 30, 2016) (rejecting argument that the plaintiffs lacked standing to bring claims relating to GoalMaker because the plaintiffs did not allege personal participation in the GoalMaker program), *aff'd*, 718 F. App'x 3 (2d Cir. 2017).

---

[4] The Amended Complaint refers to a "Plan Document" but Plaintiff neither defines this document nor attaches it as an exhibit to the Amended Complaint.  The Court assumes that Plaintiff is referring to the Prudential Employee Savings Plan Summary Plan Document, submitted as Exhibit 5 to the Declaration of Amanda S. Amert, D.E. 73-2.  Even if the Summary Plan Document is not incorporated into the Amended Complaint by reference, the Court may nonetheless consider it as a document integral to Plaintiff's claims.  *See Buck*, 452 F.3d at 260.

[5] Plaintiff does cite to decisions suggesting that a plaintiff bringing ERISA claims on behalf of all plan participants must allege an injury that is causally related to—or that shares common questions of both fact and law with— the conduct the plaintiff seeks to challenge.  *See Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 593 (8th Cir. 2009) (finding that the plaintiff had standing "for the simple reason that [he] has alleged injury in fact that is *causally related* to the conduct he seeks to challenge on behalf of the Plan") (emphasis added); *Larson v. Allina Health Sys*., 350 F. Supp. 3d 780, 792 (D. Minn. 2018) (finding that the plaintiffs who invested in certain options but not the mutual fund window had standing to bring a claim against the entire plan "because there is clearly a common question of both fact and law") (internal citation omitted).  But Plaintiff fails to allege how his individual injury resulting from investments in certain Plan funds is causally related to GoalMaker or misinformation in the online portal.

However, because Plaintiff's claims are dismissed on other grounds, the Court does not reach a definitive ruling on Plaintiff's standing to bring claims relating to GoalMaker and the alleged misinformation provided on the Plan's online portal.

### B. Group Pleading

The Individual Defendants and Bellwether argue that Plaintiff's claims against them should be dismissed as impermissible group pleading because Plaintiff fails to specify the wrongful conduct that each engaged in. Prudential Br. at 39-40; Bellwether Br. at 13-15. Mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* A complaint that contains "impermissibly vague group pleading" will be dismissed. *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original).

Here, Plaintiff fails to plead sufficient facts as to each Individual Defendant and Bellwether's involvement in the alleged wrongdoing. Indeed, beyond listing each Individual Defendant's respective position on the various Prudential committees they served on, *see* AC ¶¶ 24-36, Plaintiff's allegations fail to even mention the Individual Defendants by name, much less state specific facts as to each Individual Defendant's alleged wrongdoing.

Similarly, Plaintiff's sole factual allegations as to Bellwether's specific role in the conduct at issue are as follows:

(1)     At all pertinent times, Bellwether served as the investment adviser for the Plan (AC ¶ 37);

(2)     At all pertinent times, Bellwether was a fiduciary of the Plan responsible for ensuring that investments included in the Plan were prudent (*id.* ¶ 39);

      (3)     Bellwether provided periodic reporting to the Committees and Prudential but failed to apply a rigorous process to ensure that only prudent investments would be maintained in the plan (*id.*); and

      (4)     By failing to recommend the timely removal and replacement of the challenged investments, Bellwether breached its fiduciary duty to the Plan and its beneficiaries (*id.*).

These allegations are insufficient to plausibly establish that Bellwether engaged in improper conduct.

      Similarly, Plaintiff's claims broadly attributing misconduct to all "Defendants" generally do not satisfy the basic pleading requirement to provide adequate notice to each Defendant of the specific claims against him. *See D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) (dismissing claims for impermissible group pleading because "Plaintiffs' Complaint broadly alleges Defendants' misconduct but fails to allege the conduct for which each defendant is culpable").

      Thus, Plaintiff's claims against the Individual Defendants and Bellwether are dismissed.

**C. Provision of Inaccurate Data to Participants**

      As noted, Plaintiff makes a separate accusation that "the Plan's online participant portal contains significant amounts of erroneous data that render it difficult for participants to make investment decisions." AC ¶ 108. Plaintiff's allegations as to the online portal are comprised of a single, albeit lengthy, paragraph. *Id.* While the paragraph does indicate that that a participant may see a different number for a particular fund's five-year return if the participant entered the portal on different dates, *id.*, Plaintiff provides no facts as to what the different numbers are. More importantly, many of the allegations in the paragraph do not address erroneous information but rather indicate that certain data points that had been displayed are no longer available. *Id.* Again,

Plaintiff fails to plead why this information (or lack thereof) is actionable.  In sum, Plaintiff's allegations as to Prudential's online portal are not sufficiently pled.

### D.  Breach of the Fiduciary Duties of Prudence and Loyalty (Count One)

The Court now turns to Plaintiff's remaining claims against the Prudential Defendants. The parties do not dispute that the Prudential Defendants were acting as fiduciaries under ERISA when taking the actions of which Plaintiff complains.  ERISA's fiduciary duties are governed by 29 U.S.C. § 1104; "ERISA fiduciaries are required to act according to duties of prudence and loyalty to Plan participants."  *In re Quest Diagnostics*, No. 20-07936, 2021 WL 1783274, at *3 (D.N.J. May 4, 2021).  These duties require fiduciaries to "act with the 'care, skill, prudence, and diligence under the circumstances' that would be expected of a prudent man, and do so 'in the interest of the participants and beneficiaries' and 'for the exclusive purpose' of 'providing benefits to [them]' while 'defraying reasonable expenses of administering the plan.'"  *Id.* (alteration in original) (quoting 29 U.S.C. § 1104(a)(1)(A)-(B)).  "To assert a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege that: '(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan.'"  *Peterson v. Ins. Servs. Office, Inc.*, No. 20-13223, 2021 WL 1382168, at *3 (D.N.J. Apr. 13, 2021) (quoting *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012)).

#### 1.  Duty of Prudence

"Under § 1104(a), fiduciaries are held to the prudent [person] standard of care, which is drawn from trust law."  *Sweda*, 923 F.3d at 327 (citing *Tibble v. Edison Int'l*, -- U.S. --, 135 S. Ct. 1823, 1828 (2015)).  "A fiduciary must prudently select investments, and failure to 'monitor . . . investments and remove imprudent ones' may constitute a breach."  *Id.* at 328 (alteration in original) (citing *Tibble*, 135 S. Ct. at 1828-29).  Additionally, fiduciaries "must . . . understand and

monitor plan expenses." *Id.* "'Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan,' by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Id.* (internal citation omitted) (quoting *Tibble*, 135 S. Ct. at 1826). "Fiduciaries must also consider a plan's 'power . . . to obtain favorable investment products, particularly when those products are substantially identical – other than their lower cost – to products the trustee has already selected.'" *Id.* at 328-29 (alteration in original) (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2019)).

To determine whether a fiduciary breached its duty of prudence, courts look to "process rather than results" and inquire "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Id*. at 333. "To survive a motion to dismiss, however, Plaintiffs need not 'directly allege how [Defendants] mismanaged the Plan,' so long as there is 'substantial circumstantial evidence' to permit the Court to 'reasonably infer that a breach had occurred.'" *Silva v. Evonik Corp.*, No. 20-2202, 2020 U.S. Dist. LEXIS 250206, at *9 (D.N.J. Dec. 30, 2020) (alteration in original) (quoting *Sweda*, 923 F.3d at 332). However, Plaintiffs who rely on "circumstantial evidence must . . . provide a sound basis for comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would have selected a different fund." *Id.* (internal quotations omitted).

In reviewing a complaint, a court "may not parse [it] 'piece by piece to determine whether each allegation, in isolation is plausible.'" *Id.* (quoting *Sweda*, 923 F.3d at 221). "Instead, the Court employs a 'holistic approach' by considering all well-pleaded, non-conclusory allegations, including the 'range of investment options,' 'reasonableness of fees,' 'selection and retention of

investment options,' and 'practices of similarly situated fiduciaries.'" *Id.* (quoting *Sweda*, 923 F.3d at 331).

Before analyzing Plaintiff's duty of prudence claims, the Court briefly reviews two relevant Third Circuit decisions.  In *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), the plaintiffs alleged that the defendant inadequately investigated and selected investment options included in the challenged retirement plan. *Id.* at 326.  The Third Circuit observed that in evaluating an ERISA breach of fiduciary duty claim, courts should look to "the range of investment options and the character of those included options—including the risk profiles, investment strategies, and associated fees." *Id.* at 327.  The *Renfro* court found that the plaintiffs did not plausibly plead that the defendant had breached its fiduciary duties in selecting and maintaining the plan's investment options because the plan contained a "reasonable mix and range of investment options" and the plaintiffs had not alleged "any sort of concealed kickback scheme relating to fee payments made . . . as the *quid pro quo* for inclusion of particular unaffiliated mutual funds." *Id.*

In *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 330-31 (3d Cir. 2019), the plaintiff alleged that the defendants had breached their duty of prudence in various ways, including by paying unreasonable fees, by retaining high-cost investment options with historically poor performance compared to available alternatives, and by retaining multiple options in the same asset class and investment style.  In support of her claim that the defendants had selected and retained "identically managed but higher cost" options, the plaintiff included a table comparing options in the plan with less costly alternatives. *Id.* at 331.  The plaintiff also specifically alleged that 60% of plan options underperformed appropriate benchmarks and provided examples of "consistent underperformers" compared with "better performing, cheaper alternatives." *Id*.  Employing a "holistic approach" considering the plaintiff's well-pleaded allegations and "other germane factors

such as reasonableness of fees, selection and retention of investment options, and practices of similarly situated fiduciaries," the Third Circuit found that the plaintiff had plausibly alleged a breach of the duty of prudence. *Id.* at 331-32. In so finding, the court in *Sweda* noted that the plaintiff had offered specific comparisons between returns on the plan investment options and readily available alternatives as well as practices of similarly situated fiduciaries. *Id.*

At the outset, the Court notes that Plaintiff for the most part relies on historical price and expense information in support of his allegations. Not only is hindsight 20/20, but it also does not meet the plausibility requirement. This proposition was recognized by the court in *Patterson v. Morgan Stanley*:

> "[T]he duty of prudence standard focuses 'on a fiduciary's conduct in arriving at an investment decision, not on its *results.*'" [*Leber v. Citigroup 401(k) Plan Inv. Comm. (Leber III)*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017)] (emphasis added) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.* ("*PBGC*"), 712 F.3d 705, 716 (2d Cir. 2013)). That said, "a claim for breach of fiduciary duty under ERISA may survive a motion to dismiss – even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary – if the complaint allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *PBGC*, 712 F.3d at 718 (internal quotation marks omitted). In so alleging, "plaintiffs 'cannot rely, after the fact, on the magnitude of the decrease in the [relevant investment's] price,'" and it is not "necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions." *Id.* (alterations in original) (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011)).[6] Instead, to survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiffs must allege facts sufficient to raise the plausible inference that Defendants breached their duty of prudence in view of the facts available *at the time* they made the challenged decisions. *Id.* at 716.

---

[6] The *Citigroup* court's ruling as to a presumption of prudence for fiduciaries of an employee stock ownership plan was subsequently overruled by the Supreme Court in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 418-19 (2014).

No. 16-cv-6568, 2019 WL 4934834, at *9 (S.D.N.Y. Oct. 7, 2019) (first alteration added); *see also id.* at *11 ("[W]hether an ERISA fiduciary acted prudently is measured in light of *all* the circumstances at the time the challenged decision was made." (citing *PBGC*, 712 F.3d at 716–17)). This general shortcoming is prevalent throughout the Amended Complaint.

Plaintiff's first group of allegations indicate that Defendants charged excessive fees for certain funds. AC ¶¶ 71-84. Plaintiff fails to allege sufficient facts or provide the "substantial circumstantial evidence" necessary for the Court to reasonably infer that the Prudential Defendants breached their duty of prudence. *Sweda*, 923 F.3d at 332. Plaintiff claims that Defendants breached their fiduciary duties by "selecting and retaining high-cost and poor-performing investments…instead of offering other readily available, easily identifiable and more prudent alternative investments." AC ¶ 8. Specifically, Plaintiff claims that "[b]ased upon available metrics, some of the Prudential-affiliated funds have under-performed reasonable comparators and cost significantly more than readily available peer funds." *Id.* ¶ 10. In support, Plaintiff compares each of the challenged funds to a single corresponding Vanguard fund alleged to have a "similar investment style[]."[7] *See id.* ¶¶ 73-83. This comparison does not constitute a meaningful

---

[7] The Prudential Defendants argue that Plaintiff's comparison of the Plan's actively managed funds to passively managed Vanguard funds is inapposite and insufficient to state a claim of imprudence. Prudential Br. at 26-27. Plaintiff responds that several courts have found that the question of whether the funds being compared are actually comparable is a factual inquiry inappropriate for resolution at the motion to dismiss stage. *See* Opp. to Prudential Br. at 25 (listing cases).

The Court believes that Defendants have the better argument in part. The Court does not necessarily find that, as a matter of law, an actively managed fund can never be compared to a passively managed fund. However, the Court does find that a plaintiff must plausibly establish that it is providing an apt comparator, and the manner in which a fund is managed is a relevant consideration. *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) (noting that "[p]lausibility depends on the totality of the specific allegations in [each] case" in determining whether a plaintiff has pled an appropriate benchmark) (first alteration added) (internal quotations and citation omitted). The Court finds the following analysis by the Eighth Circuit to be persuasive:

benchmark and is insufficient to plausibly allege that the Prudential Defendants' selection and retention of the challenged funds was imprudent.  *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018) (finding that the plaintiff failed to provide a meaningful benchmark by alleging that "cheaper alternative investments with *some* similarities exist in the marketplace") (emphasis in original); *see also id.* at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset.")

Indeed, if a comparison to a *single* cheaper fund with "similar investment styles" sufficed to create a reasonable inference of imprudence, ERISA plaintiffs could challenge any fund so long as they could identify *one* cheaper fund sharing some alleged similarities with the challenged fund. But Plaintiff does not adequately plead a claim merely by alleging that "'cheaper alternatives investments exist in the marketplace.'"  *Id.* at 822 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588

---

> TIAA Real Estate Account is actively managed—meaning that professional investment managers try to beat the market through picking individual investments—and Vanguard REIT Index Fund is not.  *See* [John Downes & Jordan Elliot Goodman, *Barron's Dictionary of Finance and Investment Terms* 9-10 (8th ed. 2010)]. In fact, the latter is indexed, which is a form of passive management that tries to mimic a market index, in this case one full of real estate investment trusts. . . .
>
> . . . [I]t is not imprudent for a fiduciary to provide both investment options.  *See Meiners*, 898 F.3d at 823–24.  They have different aims, different risks, and different potential rewards that cater to different investors.  Comparing apples and oranges is not a way to show that one is better or worse than the other.  *See id.* at 823.

*Id.* at 484-85.

F.3d 585, 596 n.7 (8th Cir. 2009)).  As the Eighth Circuit observed when confronted with similar

allegations:

> Specifically, [Plaintiff] did not plead facts showing the [Defendant's funds] were underperforming funds. He only pled that one Vanguard fund, which he alleges is comparable, performed better than the [Defendant's funds].  The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [Defendant's funds] were an imprudent choice at the outset.  *See Tussey v. ABB, Inc.*, 850 F.3d 951, 960 & n.8 (8th Cir. 2017).  No authority requires a fiduciary to pick the best performing fund.  *Cf. Braden*, 588 F.3d at 596 n.7 (stating that fiduciaries are not required by ERISA to select "the cheapest possible fund" available in the market) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).

*Id.* at 823 (footnotes omitted).

Plaintiff's second group of allegations state that certain of Defendant's funds

underperformed when compared to their own benchmarks.  AC ¶¶ 85-94.  In doing so, Plaintiff

relies primarily on five-year trailing performance data and on one ten-year trailing performance

chart.  *Id.*  Yet, as noted, Plaintiff fails to make plausible allegations as to the information available

to Defendants at a particular point in time when retention decisions were made.  And even if the

Amended Complaint's allegations were not improperly based on hindsight, they are still

insufficient.  The time period at issue is, for the most part, fairly short.  *See Dorman v. Charles

Schwab Corp.*, No. 17-cv-00285 (CW), 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (noting

that "three to five years ... [is] considered [a] relatively short period[ ] of underperformance" that

does not imply imprudence).  The Court also agrees with the following observation from the

*Patterson* court:

> "Plaintiffs' allegations of the Fund['s] alleged underperformance in average annual returns as compared to certain benchmark indices or alleged insufficient performance history ... do not raise a plausible inference that a prudent fiduciary would have found [the] Fund[ ] to be 'so plainly risky' as to render the investments in them

imprudent." [*Leber v. Citigroup 401(K) Plan Inv. Comm. (Leber II)*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015)] (quoting *PBGC*, 712 F.3d at 719).  Although courts in this district have recognized that allegations of consistent, ten-year underperformance may support a duty of prudence claim, *see Sacerdote v. New York Univ. (Sacerdote I)*, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25, 2017), the underperformance must be substantial, *see Jacobs v. Verizon Commc'ns, Inc.*, No. 16-cv-1082 (PGG), 2017 WL 8809714, at *9 (S.D.N.Y. Sept. 28, 2017) (denying motion to dismiss prudence claim because the "fund had an average annual return of 1.74% compared to its benchmark, which returned 10.37% over that same ten-year period").

2019 WL 4934834, at *10.  Here, Plaintiff admits that on several occasions the relevant funds outperformed their benchmarks.  AC ¶¶ 85-94.  More importantly, Plaintiff has not alleged that the underperformance was sufficiently substantial:  The Prudential Retirement Real Estate Fund in its five-year trailing performance had underperformance percentages ranging from .07% to 3.71% (and this was an outlier with the next highest being 1.08%), and its ten-year trailing performance reflected underperformance ranging from 1.19% to 2.86%; The Prudential High Yield Collective Investment Trust in its five-year trailing performance had underperformance percentages ranging from .05% to 1.06%; and The Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio in its five-year trailing performance had underperformance percentages ranging from .22% to 1.07%.  *Id.*

Plaintiff additionally claims that Defendants should have removed two of the challenged funds from the Plan earlier than they did.  AC ¶¶ 92-94.  Whether certain investments were timely removed is a question of fact, and thus, properly pled, these claims could survive the motion to dismiss stage.  However, Plaintiff's allegations are too conclusory and fail "to show a prudent fiduciary in like circumstances would have [removed the challenged funds]."  *Silva*, 2020 U.S. Dist. LEXIS 250206, at *9; *see also Patterson*, 2019 WL 4934834, at *11 ("Though Plaintiffs might now wish that Defendants had removed the Mid Cap Fund from the array of Plan options in

21

2011 or 2012, the mere fact that the Mid Cap Fund did not do as well as other options does not give rise to the inference that Defendants' decision to retain that investment offering was imprudent." (citations omitted)).  Accordingly, Plaintiff's allegations are not plausibly pled.

Plaintiff's claims regarding Defendants' selection of Prudential-affiliated funds and Prudential's receipt of administrative fees fare no better.  Plaintiff alleges that "at least half of the funds offered to participants were Prudential-affiliated funds, which provided millions of dollars of revenue for Prudential and its affiliates and subsidiaries."  AC ¶ 103.  The Amended Complaint also contains a cursory mention of Prudential's role as the Plan's recordkeeper.  Specifically, Plaintiff alleges that "Prudential serves as the recordkeeper for the Plan, providing yet a further stream of revenue and extra benefit for Prudential," and that the Investment Oversight Committee's selection of Prudential funds was "unsurprising, given that Prudential serves as the Plan's recordkeeper, and the Plan utilizes a revenue-sharing arrangement to pay the majority of its administrative expenses," thus bestowing upon Prudential "additional revenue in the form of direct participant fees and indirect fees via revenue sharing."  AC ¶¶ 6, 11.  These claims are insufficient.

The Amended Complaint does not provide any comparisons to the practices of similarly situated fiduciaries or otherwise provide specific allegations supporting an inference of imprudence with regard to Defendants' selection of Prudential-affiliated funds or Prudential's administrative fees.  By comparison, the Third Circuit has found the following allegations to be adequate:

> In Count III, Sweda alleged that Penn paid excessive administrative fees, failed to solicit bids from service providers, failed to monitor revenue sharing, failed to leverage the Plan's size to obtain lower fees or rebates, and failed to comprehensively review Plan management. *Specifically, Sweda alleged that the Plan paid between $ 4.5 and $ 5.5 million in annual recordkeeping fees at a time when similar plans paid $ 700,000 to $ 750,000 for the same services.  Sweda also alleged that percentage-based fees went*

22

> *up as assets grew, despite there being no corresponding increase in* *recordkeeping services.* Sweda alleged that Penn could have negotiated for a cap on fees or renegotiated the fee structure, but failed to do either. Sweda also alleged that Penn could have assessed the reasonableness of Plan recordkeeping fees by soliciting competitive bids, but, unlike prudent fiduciaries, failed to do so. *For contrast, Sweda offered examples of similarly situated fiduciaries who acted prudently, such as fiduciaries at Loyola Marymount who hired an independent consultant to request recordkeeping proposals and consolidated services with a single provider. Sweda pointed to similar moves at Pepperdine, Purdue, and CalTech, as well as Caltech's negotiation for $ 15 million in revenue sharing rebates.* Sweda alleged that unlike those organizations, Penn failed to review Plan management, and fell behind other fiduciaries in the industry.

*Sweda*, 923 F.3d at 330-31 (emphases added).

Plaintiff further alleges that Defendants improperly advanced their own interests through GoalMaker, which Plaintiff alleges "disproportionately allocate[es] participant funds to investments managed by Prudential or its affiliates," and "produce[s] poor returns for investors" when compared to alternative funds. *Id.* ¶¶ 96, 98. However, the Plan's Summary Plan Document confirms that Mesirow, an independent consultant unaffiliated with Prudential, is responsible for developing the GoalMaker portfolios. D.E. 73-2, Ex. 5 at 24. The Summary Plan Document is integral to the Amended Complaint and is therefore properly considered by the Court. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n.8 (3d Cir.1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); *see also Goldenberg v. Indel, Inc.*, 741 F.Supp. 2d 618, 624 (D.N.J. 2010) ("Th[e] Complaint relies, directly or indirectly, upon a number of public documents or documents referenced in the Complaint. The Court will consider these documents about which there is no dispute as to authenticity, and to the extent they contradict the Complaint's factual allegations, the documents will control." (citation omitted)). Thus, the Prudential Defendants were not fiduciaries of the Plan with regard to GoalMaker and cannot be liable for a breach of

fiduciary duty relating to GoalMaker's asset allocation.  *See Renfro*, 671 F.3d at 321 ("[A]n entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan"); *see also Coleman v. Nationwide Life Ins. Co*., 969 F.2d 54, 61 (4th Cir. 1992), *as amended* (July 17, 1992) ("The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves.").[8]

In sum, as in *Renfro*, the Court is "unable to infer from what is alleged that the process was flawed" because Plaintiff "ha[s] provided nothing more than conclusory assertions that [the Prudential Defendants] breached [their] duty to prudently and loyally select and maintain the plan's mix and range of investment options."  *Renfro*, 671 F.3d at 327-28.  Specifically, Plaintiff fails to offer the "numerous and specific factual allegations" of "substantial circumstantial evidence" that would allow this Court to reasonably infer a breach of the Prudential Defendants' duty of prudence.  *Sweda*, 923 F.3d at 332.

### 2.  Duty of Loyalty

ERISA also imposes a duty of loyalty and requires that fiduciaries act "with an eye single toward beneficiaries' interests."  *McGowan*, 2021 WL 1399870, at *7 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)).  "To plead a loyalty claim, courts look for allegations

---

[8] This is not to say that only persons, groups, or entities named in a plan document can be fiduciaries.  Others may still qualify as fiduciaries if they have discretionary authority.  *See, e.g., In re Schering-Plough Corp. ERISA Litig.*, No. Civ.A. 03-1204 (KSH), 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("While ERISA requires the written plan document to name at least one fiduciary who is responsible for the operation and administration of the plan, other individuals not named in the written plan document may still qualify as fiduciaries of the plan if they have discretionary authority.").  The *Coleman* court noted that courts should "look beyond the formalities" to see if a party in fact exercised discretion.  *Coleman*, 969 F.2d at 61.  But here, Plaintiff does not plead any plausible facts showing that Defendants had discretion to select the GoalMaker portfolio funds.

suggesting that the fiduciary made decisions benefitting itself or a third party." *Id.* "Accordingly, a plaintiff may not simply 'recast' a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit." *Silva*, 2020 U.S. Dist. LEXIS 250206, at *19.

Plaintiff's allegations are again insufficient. Plaintiff contends that Prudential benefitted from the Plan's "excessive use" of Prudential funds by collecting a fee revenue and instilling in Prudential employees "loyalty, product knowledge, and a built-in sales pitch touting the employees' personal investment in the pitched products." AC ¶ 65. These conclusory allegations are insufficient to suggest that the Prudential Defendants acted with improper motive or for their financial benefit. Plaintiff similarly fails to plead facts suggesting an improper motive or financial benefit with regard to his allegations regarding excessive fees, fund underperformance, the GoalMaker program, or Prudential's recordkeeping services. As explained in connection with Plaintiff's duty of prudence claims, Plaintiff has not properly alleged that the challenged funds, GoalMaker, or Prudential's recordkeeping services were imprudent, and "[a]bsent any well-pled factual allegations that the [challenged actions] were an imprudent choice, no inference can be reasonably drawn" that the Prudential Defendants retained those funds or engaged in the other challenged activity "out of improper motives." *Meiners*, 898 F.3d at 824. Accordingly, Plaintiff has not sufficiently plead that the Prudential Defendants acted disloyally. *See Patterson*, 2019 WL 4934834, at *12 ("[A] plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products; rather a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else.") (emphasis in original) (internal citation omitted). Because Plaintiff has failed to allege facts

supporting his duty of prudence and duty of loyalty claims, Plaintiff's fiduciary duty claims in Count I must be dismissed.

### E.  Prohibited Transaction with a Party in Interest in Violation of 29 U.S.C. § 1106(a)(1) (Count Two)

Plaintiff claims that Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1)(C) and (D) by "causing the Plan to invest in Prudential-affiliated funds and purchase investment management and other products and services, including recordkeeping services, from Prudential subsidiaries and affiliates." AC ¶¶ 68, 127.  Section 1106(a) governs prohibited transactions and "erect[s] a categorical bar to transactions between the plan and a 'party in interest' deemed likely to injure the plan." *Sweda*, 923 F.3d at 327 (quoting *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012)).  This provision provides, in relevant part, as follows:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1)(C), (D).

To plausibly allege a violation of Section 1106(a)(1)(C), Plaintiff must provide "factual allegations that support an element of intent to benefit a party in interest." *Sweda*, 923 F.3d at 338. To state a claim for a violation of Section 1106(a)(1)(D), Plaintiffs must allege that "(1) a fiduciary, (2) causes a plan to engage in a transaction, (3) that uses plan assets, (4) for the benefit of a party in interest, and (5) 'the fiduciary knows or should know that elements three and four are satisfied.'" *Id.* at 337 (quoting *Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995) (internal quotation omitted)). The fourth element "require[s] a subjective intent to benefit a party in interest." *Reich*, 57 F.3d at 279.  This requisite element of intent for violations of Sections 1106(a)(1)(C) and (D) "effects the

purpose of § 1106(a)(1), which is to rout out transactions *that benefit [parties in interest] at the expense of participants*." *Sweda*, 923 F.3d at 338 (emphasis added).

Here, Plaintiff has failed to adequately plead that the Prudential Defendants had an intent to benefit a party in interest.  Plaintiff provides only conclusory allegations that Defendants invested in Prudential and Prudential-affiliated funds, resulting in "millions of dollars in fee[]" payments and "significant losses" to the Plan and its participants.  AC ¶ 128.  For instance, Plaintiff alleges that "the Investment Oversight Committee selected Prudential Funds because they were familiar and generated substantial revenues for Prudential," *id.* ¶ 11, but fails to plead any specific facts supporting an intent to benefit a party in interest.  Plaintiff also claims that because Prudential performed recordkeeping and administrative functions for the Plan, it "receive[d] additional revenue in the form of direct participant fees and indirect fees via revenue sharing," *id.*, but again fails to adequately allege any intent to benefit a party in interest.  Such conclusory allegations are insufficient to establish that the Prudential Defendants acted with the requisite intent for a violation of Section 1106(a)(1).  By way of example, allegations that a plan fiduciary was obscuring the relationship between itself and a party in interest that was receiving benefits from the fiduciary could be sufficient to establish the requisite intent.  However, Plaintiff pleads no such analogous activity here.  Indeed, if Plaintiff's bare allegations were sufficient to establish that the Prudential Defendants acted with the requisite intent, any instance in which a fiduciary invested in affiliated funds or paid service fees to affiliated parties would constitute a prohibited transaction.  Such a result would be contrary to the purpose of Section 1106(a)(1), which "is not meant to impede necessary service transactions, but rather transactions that present *legitimate risks to participants and beneficiaries* such as securities purchases or sales by a plan to manipulate the price of the security to the advantage of a party-in-interest." *Sweda*, 923 F.3d at 338 (emphasis added).

Accordingly, Plaintiff has failed to adequately allege that the Prudential Defendants engaged in a prohibited transaction under 29 U.S.C. § 1106(a)(1). As a result, the Court need not analyze whether the exemptions to liability apply here. Count Two is dismissed.

### F. Prohibited Transaction with a Party in Interest in Violation of 29 U.S.C. § 1106(b)(1) (Count Three)

Plaintiff also alleges that Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(b)(1) and (3) by "caus[ing] the Plan to pay investment management fees and expenses to Prudential out of Plan assets," and receiving fees and expenses from Plan assets in exchange for services performed by Prudential. AC ¶¶ 131-32. Section 1106(b) "prohibits fiduciaries from entering into transactions with the plan tainted by conflict-of-interest and self-dealing concerns." *Iola*, 700 F.3d at 82. The statute provides, in relevant part, that "[a] fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account…or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b).

The Third Circuit has instructed that "406(b) is not meant to prevent fiduciaries from being paid for their work, and a service provider cannot be held liable for accepting previously bargained-for fixed compensation." *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013). Rather, courts have found that 406(b) "prohibit[s] transactions involving kick-backs to fiduciaries and self-negotiated loans." *Id.* (collecting Third Circuit cases); *see also Rosen v. Prudential Retirement Insurance and Annuity Co.*, 718 F. App'x 3 (2d Cir. 2017) (affirming dismissal of the plaintiff's prohibited transaction claims relating to consideration received in the form of revenue-sharing payments because the plaintiff did not allege that the service provider received payments without the fund manager's consent or knowledge and did "not distinguish between ordinary compensation for services in the form of revenue-sharing payments and illicit kickbacks").

28

Here, Plaintiff fails to sufficiently plead that the Prudential Defendants engaged in prohibited transactions under Section 1106(b).  Plaintiff makes conclusory statements that the payment of investment management and service fees and expenses to Prudential and its affiliates constituted prohibited transactions.  *See*, *e.g.*, AC ¶¶ 66, 68, 131-32.  However, the Amended Complaint contains no allegations demonstrating that the fees paid to Prudential were anything more than "previously bargained-for fixed compensation" intended to compensate Prudential for its work.  *Danza*, 533 F. App'x at 126.  Thus, Plaintiff has not adequately alleged a violation of Section 1106(b) and Count Three is dismissed.[9]

### G.  Failure to Monitor Other Fiduciaries (Count Four)

Count Four is brought against the Prudential Defendants.  "Courts recognize that when a fiduciary has and exercises the power to appoint and remove plan administrators, it has the duty to monitor those appointees."  *McGowan*, 2021 WL 1399870, at *8.  However, "Plaintiffs cannot maintain a claim for breach of the duty to monitor…absent an underlying breach of the duties imposed under ERISA[.]"  *In re Allergan ERISA Litig*., No. 17-1554, 2018 WL 8415676, at *7 (D.N.J. July 2, 2018) (internal citation omitted), *aff'd sub nom. In re Allergan Erisa Litig*., 975 F.3d 348 (3d Cir. 2020).  Because the Amended Complaint fails to adequately plead that the Prudential Defendants breached their fiduciary duties, Plaintiff's failure to monitor claim is also dismissed.

---

[9] The Prudential Defendants also argue that ERISA contains express exemptions to the prohibited transaction provisions and list several exemptions without specifying which apply to the situation at hand.  Prudential Br. at 37-38.  Though the Court does not reach this argument, the cited statutory exemptions apparently do not apply to transactions prohibited under Section 1106(b).  *See Iola*, 700 F.3d at 95 (holding that the exemptions to prohibited transactions set forth in 29 U.S.C. § 1108 apply to Section 406(a) but not Section 406(b)).

### I. Knowing Breach of Trust (Count Five)

Plaintiff pleads in the alternative that, to the extent any Defendants are not deemed a fiduciary or co-fiduciary under ERISA, such Defendants should be liable for participating in a knowing breach of trust.  In order to state a claim for a non-fiduciary's knowing breach of trust, a plaintiff must plead facts plausibly supporting the conclusion that the defendant (1) knowingly participated (2) in a fiduciary's violation of a duty.  *See Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp. 3d 665, 676 (E.D. Pa. 2018).  As discussed above, Plaintiff has not adequately plead an underlying breach of fiduciary duty.  In any event, Plaintiff fails to plausibly allege that the Prudential Defendants acted with the requisite knowledge to sustain a knowing breach of trust claim.  Accordingly, Count Five is dismissed.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED.**  The dismissal is without prejudice and Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiff does not file an amended complaint within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: September 27, 2021

John Michael Vazquez, U.S.D.J.