Tricia B. O'Reilly
Joseph L. Linares
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, Floor 15
Newark, New Jersey 07102
Tel.: (973) 757-1100

*Of counsel* (admitted *pro hac vice*):
Amanda S. Amert
LaRue L. Robinson
Sara Kim
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle Street
Chicago, IL  60654-3406
Tel. (312) 728-9000

*Attorneys for Prudential Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOUNG CHO, Individually and as Representative of a Class of Similarly Situated Persons, and on Behalf of the PRUDENTIAL EMPLOYEE SAVINGS 401(k) PLAN,<br><br>Plaintiff,<br><br>vs.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL INVESTMENT OVERSIGHT COMMITTEE, BELLWETHER CONSULTING LLC, LUCIEN ALZIARI, SARA BONESTEEL, GARY NEUBECK, SCOTT SLEYSTER, and SHARON TAYLOR<br><br>Defendants. | Civil Action No. 2:19-cv-19886 (JMV)(LDW)<br><br>**[PROPOSED] ORDER SEALING EXHIBITS TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>*Electronically Filed* |

**THIS MATTER** comes before the Court on the motion to seal filed by Defendants The Prudential Insurance Company of America ("PICA"), the Prudential Investment Oversight Committee ("IOC"), and individual defendants Lucien Alziari, Sara Bonesteel, Gary Neubeck, Scott Sleyster, and Sharon Taylor (collectively, "Prudential") and Defendant Bellwether Consulting LLC ("Bellwether")  seeking entry of an Order sealing the following documents (collectively, "Confidential Materials") pursuant to Local Civil Rule 5.3(c):

A.      Exhibits 10–22 attached to the Declaration of Amanda S. Amert, dated December 20, 2021 (ECF Nos. 113, 113-1, and 113-2);

B.      The Memorandum of Law in Support of Bellwether's Motion to Dismiss the Second Amended Complaint, dated December 20, 2021 (ECF No. 115-1);[1]

C.      Exhibits 1–3 attached to the Declaration of Marion R. Harris, dated December 20, 2021 (ECF Nos. 115-2, 115-3, and 115-4); and

D.      The Reply Memorandum of Law in Support of Bellwether's Motion to Dismiss the Second Amended Complaint, dated February 25, 2022 (ECF No. 122).[2]

The Confidential Materials contain and/or reflect information Defendants have designated as "Confidential" pursuant to Local Civil Rule 5.3, the Discovery Confidentiality Order dated June 17, 2020 (ECF No. 45), and the Stipulation and Order Regarding Bellwether's and the Individual Defendants' Agreement to be Bound by the Operative Discovery Confidentiality Order and Joint ESI Protocol dated February 26, 2021 (ECF No. 85).

Having considered the papers submitted by defendants in support of their motion and any papers in reply thereto; considered and adopted the declarations of Gail Maytin and Keith Hocter; further found that the standards of Local Civil Rule 5.3(c) have been met and support the sealing of the Confidential Materials; and for other and good cause having been shown, the Court hereby finds:

---

[1] Defendants move to seal the following portions of the Bellwether Opening Brief: page 17, first paragraph, lines 3–8 after "minutes" until "Cho;"  page 17, second paragraph, lines 12–17 after "minutes" until "Cho;" page 18, lines 1–4 after "mention" until "Again;" page 18, second paragraph, lines 15–20 after "states" through the end of the page; and page 19, first paragraph, lines 1 and 2 until "It is only."

[2] In the Bellwether Reply Brief, defendants move to seal paragraphs numbered 1–5 beginning at the bottom of page 6 and ending on page 7.

**FINDINGS OF FACT**

1.      Local Civil Rule 5.3(c) indicates that parties that desire to use material designated as confidential must move pursuant that rule for leave to file the submission under seal.

2.      Thus, in accordance with Local Civil Rule 5.3(c), defendants move to seal the Confidential Materials, which contain information that, if disclosed, may injure the Prudential Employee Savings Plan ("PESP" or the "Plan") and/or Bellwether.

3.      The Confidential Materials consist of the IOC's Briefing Books and Meeting Minutes.  The IOC is a named fiduciary of the Plan, is responsible for establishing the Plan's investment policies, and makes all decisions regarding selection, retention, and removal of funds in PESP's investment lineup.  One of the primary functions of the IOC is to select funds for the Plan.  Thus, the Confidential Materials contain descriptions of the IOC's negotiations of contract terms, including fees, with each of the Plan's fund managers.

4.      Bellwether is one of the Plan's independent investment advisors.  In this role, Bellwether assists in reviewing and evaluating the Plan's investment performance, participates in certain of Prudential's negotiations of contracts and fees with fund managers and discussions about those negotiations with the IOC.  As the Plan's investment advisor, Bellwether also makes recommendations to retain or remove investment funds and regularly does so during the IOC's quarterly meetings.

5.      The IOC Meeting Minutes summarize what was discussed at a particular IOC quarterly meeting.  The IOC Briefing Books contain records of IOC quarterly meetings and include an agenda; the expected attendance for that meeting; the Meeting Minutes for the prior quarterly meeting; Bellwether's Investment Performance Monitor ("IPM") for the Plan's funds for the prior quarter; and any other materials pertinent to the discussion at that meeting.

6.      During the quarterly meetings, the IOC and Bellwether have frank conversations regarding the funds, their managers, and the success of the Plan, which informs their honest assessment of the Plan's funds.

7.      To this end, the Confidential Materials contain descriptions of conversations had regarding fee negotiations and disclose the defendants' opinions and impressions of various funds and their managers, as well as their negotiating strategies for those managers.  For example, on page three of Prudential's Exhibit 11, the IOC's December 2, 2015 Meeting Minutes, Bellwether, an IOC member, and Gail Maytin ("Ms. Maytin"), PICA's Chief Investment Officer ("CIO"), offered their impressions regarding how efficiently the Plan could add a new fund and fund manager, move money from one fund to another, and replace a certain fund in PESP's lineup.  (*See* Maytin Decl. at ¶ 10.)  Also, on page two of the December 7, 2016 Briefing Book, Ms. Maytin discussed how PESP could leverage certain opportunities for its benefit and described particular negotiations that transpired with respect to some of the Plan's funds.  (*See id*.)  Publicizing this private information is likely to compromise Prudential's business relationships, and negatively impact the Plan.  (*See id*. at ¶¶ 12–13.)  Specifically, if a fund knew that the cost to Prudential of changing funds would be more than Prudential is requesting in a fee reduction, it could negatively impact the Plan's ability to reduce fees.  (*See id*. at ¶ 10.)  Also, if a fund manager knew that the IOC, Bellwether, or Ms. Maytin were negative on a particular approach to investing, then the fund might downplay the extent it uses that approach to try to get PESP business.  (*See id*.)  Moreover, if Prudential is conducting a search to add a new fund to PESP, those potentially new fund managers might be hesitant to work with PESP due to a risk that IOC conversations critical of their funds and their abilities to manage their funds appropriately will be publicly disclosed.  (*See id*. at ¶ 13.)

8.     Also, disclosing the Confidential Materials would likely harm Bellwether because doing so would reveal its confidential business information.  (*See* Hocter Decl. at ¶ 12.)  Bellwether has submitted the declaration of Keith Hocter ("Mr. Hocter").  (*See id*.)  Therein, Mr. Hocter explains that the Confidential Materials substantially describe specific advice regarding the Plan's funds and unique investment screening tests, which were exclusively provided to the IOC.  (*See id*. at ¶ 8.)  For example, Bellwether's Exhibit 3 contains an excerpt from the IOC's December 7, 2016 Briefing Book wherein Bellwether provides an explanation of its investment advice specific to a particular PESP investment fund and its reasoning behind that recommendation.  (*See id*..)  Recommendations and explanations of this nature appear throughout the Confidential Materials.  (*See id*. at ¶ 11.)  Together, the Confidential Materials depict Bellwether's proprietary investment analysis process, which it has spent substantial effort developing over time.  (*See id*. at ¶¶ 8–11.)  If the Confidential Materials are not sealed, Bellwether's competitors would gain access to this valuable content.  (*See id*. at ¶ 10.)  In turn, those competitors would be placed at a substantial advantage in the marketplace at Bellwether's expense.  (*See, generally*, Hocter Decl. at ¶ 10.)

9.     Furthermore, because the Confidential Materials describe candid conversations between Bellwether and IOC members, which took place with the understanding that those conversations would remain confidential, publicizing the Confidential Materials, and in turn, remarks made under a belief of confidentiality, will chill candor in future meetings, which could be harmful to the Plan.

10.     The clearly defined and serious injury that would result if the Confidential Materials are disclosed is that Prudential and the Plan would likely be exposed to financial harm including, but not limited to, damage to business relationships and/or other irreparable harm if any of these confidential opinions are publicly disclosed.

## CONCLUSIONS OF LAW

1.      Having considered this matter pursuant to Local Civil Rule 5.3 and *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), the Court finds that Defendants satisfied their burden under Local Civil Rule 5.3(c) and applicable case law, and that the Confidential Materials are entitled to protection.

2.      In civil cases, there is a common law public right of access to judicial proceedings and records.  *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677–78 (3d Cir. 1988)).  But to be sure, "the right of access to judicial records is not absolute."  *In re Gabapentin Pat. Litig.*, 312 F. Supp. 2d 653, 663–64 (D.N.J. 2004) (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993)); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 395–96 (D. Del. 2000)).  In deciding whether a document should be sealed, courts must balance the "presumption of access . . . against the factors militating against access."  *In re Cendant Corp.*, 260 F.3d at 194 (citation omitted).  "It is the burden of the party seeking to overcome the presumption of access to demonstrate the need to keep the materials under seal."  *In re Gabapentin Pat. Litig.*, 312 F. Supp. 2d at 664 (citation omitted).  To satisfy its burden, movants must show that the materials contain "the type of information that courts will protect and that there is good cause for continued application of an existing order[.]" *Id*. (citations omitted).  To establish good cause, movants must demonstrate that "disclosure will result in a clearly defined and serious injury to the party seeking to overcome the presumption of access." *Id.*; *see also Pansy*, 23 F.3d at 786–87.

3.      Privacy is a recognized interest that counsels in favor of protection. *Pansy*, 23 F.3d at 786.  Along this vein, "[d]ocuments containing . . . confidential business information may be protected from disclosure" to prevent court files from serving as "'sources of business information

that might harm a litigant's competitive standing.'" *Leucadia, Inc.*, 998 F.2d at 166 (quoting *Nixon v. Warner Commc'ns.*, 435 U.S. 589, 598 (1978)); *see also In re Gabapentin Pat. Litig.*, 312 F. Supp. 2d at 664; *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *Republic of Philippines v. Westinghouse*, 949 F.2d 653, 662 (3d Cir. 1991) (quotation omitted)).  Defendants' submissions indicate that the Confidential Materials warrant protection under this exception as the Confidential Materials contain information that may cause damage to the business relationships of Prudential and PESP.

4.      Also, Local Civil Rule 5.3(c) places the burden of proof on the moving party to show: (1) the nature of the materials or proceedings at issue; (2) the legitimate private or public interest which warrants the relief sought; (3) the clearly defined and serious injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to the relief sought is not available.  Local Civ. R. 5.3 (c).  The information in defendants' submissions satisfy these standards and there is no less restrictive alternative to sealing the Confidential Materials.

**THEREFORE**, it is on this 13th day of May 2022;

**ORDERED** as follows:

1.      The Confidential Materials are entitled to protection.

2.      The Court further finds that Prudential and PESP would likely suffer substantial and specific harm, including, but not limited to, damage to business relationships through the divulgence the Confidential Materials. Bellwether would likely suffer damage because its proprietary business information would be disclosed.  Thus, the public interest weighs in favor of the Confidential Materials remaining private and being sealed.  No less restrictive alternative exists.

3.      Therefore, Defendants' motion to seal the Confidential Materials is **GRANTED**.

**SO ORDERED.**

_____

**José R. Almonte**
**United States Magistrate Judge**