<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| YOUNG CHO, Individually and as Representative of a Class of Similarly Situated Persons, and on Behalf of the PRUDENTIAL EMPLOYEE SAVINGS 401(k) PLAN,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL ADMINISTRATIVE COMMITTEE, PRUDENTIAL INVESTMENT OVERSIGHT COMMITTEE, BELLWETHER CONSULTING LLC, LUCIEN ALZIARI, SARA BONESTEEL, ELLEN BORAK, TINA CAWLEY, THOMAS LAURITA, PATRICK LYNCH, JOSEPH MACHEWIRTH, LYNN MCTAGGART, GARY NEUBECK, KEVIN PRUE, SCOTT RAMSAY, SCOTT SLEYSTER, and SHARON TAYLOR,<br><br>*Defendants*. | Civil Action No. 19-19886 (JMV) (SCM)<br><br><br>**OPINION** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This putative class action, brought under the Employee Retirement Income Security Act ("ERISA"), arises out of allegations that fiduciaries of the Prudential Employee Savings Plan (the "Plan") breached their duties of prudence and loyalty, engaged in prohibited transactions, and breached their monitoring duties. Presently before the Court are Defendants' motions to dismiss Plaintiff's Second Amended Complaint ("SAC"). D.E. 112, 114. The Court reviewed all the

submissions in support and in opposition[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part** pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    BACKGROUND[2]

Plaintiff Young Cho brings this action on behalf of himself and all participants and beneficiaries in the Plan on or after November 5, 2013 to the present (the "Class Period").  SAC ¶ 98.  Plaintiff was employed by Prudential until May 2018 and participated in the Plan until March 20, 2019.  *Id.* ¶ 20.  During the Class Period, Plaintiff's Plan investments included investments in various funds, trusts, and Prudential common stock.  *Id*.  The Plan is an "employee pension benefit plan" and a "defined contribution plan" in accordance with the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(34).  *Id.* ¶ 21.  The Plan, also called a "401(k)" plan, "serves as a vehicle for retirement savings and to produce retirement income for employees of Prudential."  *Id.* ¶¶ 21, 32. The Plan is "established and maintained . . . in accordance with 29 U.S.C. § 1102."  *Id.* ¶ 32.  It operates as a participant-directed plan; participants choose from "a pre-selected menu of investment offerings consisting of several types of investments."  *Id.* ¶ 33.  "As of December 31, 2020, the Plan offered the following types of investment options: mutual funds, separately

---

[1] The Prudential Defendants' moving brief ("Prudential Br."), D.E. 112-1; Plaintiff's brief in opposition to the Prudential Defendants' moving brief ("Opp. to Prudential Br."), D.E. 119; the Prudential Defendants' reply brief, D.E. 121; Defendant Bellwether's moving brief ("Bellwether Br."), D.E. 115-1; Plaintiff's brief in opposition to Bellwether's moving brief, D.E. 118; and Bellwether's reply brief, D.E. 122.  The Court also reviewed the Prudential Defendants' letter enclosing new supplemental authority, D.E. 126, and Plaintiff's response to the letter, D.E. 127.

[2] The factual background is taken from the SAC, D.E. 106.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

managed accounts ("SMAs"), Prudential Financial, Inc. common stock, collective investment trusts, guaranteed retirement income products and a fixed rate fund structured as a group annuity contract." *Id.* ¶ 35.

Defendants include the Prudential Insurance Company of America ("Prudential"); the Prudential Investment Oversight Committee ("Investment Oversight Committee"); Lucien Alziari, Sarah Bonesteel, Gary Neubeck, Scott Sleyster, and Sharon Taylor (the "Individual Defendants," and together with Prudential and the Investment Oversight Committee, the "Prudential Defendants"); and Bellwether Consulting LLC ("Bellwether"). *Id.* ¶ 2. Prudential is a "plan sponsor" pursuant to 29 U.S.C. § 1002(16)(B), which means that Prudential is also a "party of interest." *Id.* ¶ 22. Prudential is considered a "named fiduciary" of the Plan pursuant to 29 U.S.C. § 1102(a). *Id.* The Investment Oversight Committee is comprised of Prudential officers and employees and is responsible for selecting and monitoring the Plan's investments and establishing the Plan's investment policies. *Id.* ¶¶ 2, 23. The Investment Oversight Committee is also a "named fiduciary" of the Plan pursuant to 29 U.S.C. § 1102(a). *Id.* The Individual Defendants are current or former members of the Investment Oversight Committee, *id.* ¶¶ 24-28, and were delegated fiduciary authority for the Plan, *id.* ¶ 30. Bellwether is a limited liability company organized under New Jersey laws and headquartered in New Jersey. *Id.* ¶ 29. During the relevant period, Bellwether served as the investment advisor for the Plan and was a fiduciary of the Plan pursuant to 29 U.S.C. § 1102(21) responsible for "ensuring that the investments included in the Plan were prudent." *Id.* ¶¶ 29, 31.

Plaintiff alleges that Defendants breached their fiduciary duties outlined in 29 U.S.C. § 1104 "by failing to act solely in the interest of the Plan and its participants and beneficiaries" as well as by "failing to exercise the required care, skill, prudence, and diligence in investing the

assets of the Plan and disclosing the fees charged to the participants." *Id.* ¶ 58. Specifically, Plaintiff claims that Defendants breached their fiduciary duties by "caus[ing] the Plan to purchase shares, units, or interests in Prudential-affiliated funds, which charged significantly higher fees than comparable, unaffiliated funds, while simultaneously providing poor returns." *Id.* Plaintiff further claims that Defendants violated ERISA through their use of GoalMaker, an optional asset allocation tool designed to "allocate[] a participant's retirement funds among certain Plan investment options according to the participant's age and risk tolerance." *Id.* ¶ 82, p. 35.[3] Plaintiff continues that GoalMaker advanced Defendants' interests by "disproportionately allocating participant funds to investments managed by Prudential or its affiliates." *Id.* ¶ 83, p. 36. Plaintiff also alleges that Defendants violated ERISA because the Plan information provided by Defendants "is riddled with inconsistencies, omissions, inaccuracies, and incomplete information." *Id.* ¶ 96.

Plaintiff additionally claims that Defendants violated 29 U.S.C. § 1106 by "causing the Plan to invest in Prudential-affiliated funds and purchase investment management and other products and services, including recordkeeping services, from Prudential subsidiaries and affiliates." *Id.* ¶ 59. According to Plaintiff, the Plan's investments in Prudential funds and its payment of fees to Prudential and its affiliates constituted prohibited transactions under 29 U.S.C. §§ 1106(a) and (b). *Id.* ¶¶ 112-123.

Finally, Plaintiff asserts that Prudential breached its fiduciary duty to monitor by failing to properly monitor the performance of the Investment Oversight Committee, the Individual Defendants, and Bellwether, and similarly that the Investment Oversight Committee breached its fiduciary duty to monitor the performance of the Individual Defendants and Bellwether. *Id.* ¶¶

---

[3] Various paragraphs in the SAC are numbered duplicatively. As a result, the Court includes a page reference to differentiate between paragraphs with the same number.

124-131.  This led to Plan participants "los[ing] millions of dollars in retirement savings."  *Id.* ¶ 130.

On September 17, 2020, Plaintiff filed his Amended Complaint, D.E. 53; Defendants subsequently filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.E. 73, 74.  The Court granted the motions to dismiss but gave Plaintiff leave to file an amended complaint curing the noted deficiencies.  D.E. 102, 103.  The Court first found that Plaintiff had standing to bring claims relating to funds in which he did not personally invest.  D.E. 102 ("Opinion") at 9.  However, the Court declined to rule on Plaintiff's standing to bring claims relating to GoalMaker and the alleged misinformation provided on the Plan's online portal, as Plaintiff's claims were dismissed on other grounds.  *Id.* at 12.  The Court further held that Plaintiff's claims against the Individual Defendants[4] and Bellwether should be dismissed as impermissible group pleading.  *Id.* at 12-13.  As to Plaintiff's claims regarding the provision of allegedly inaccurate data to Plan participants, the Court found that these allegations were insufficiently pled because "Plaintiff fail[ed] to plead why this information (or lack thereof) is actionable."  *Id.* at 13-14.

The Court also held that Plaintiff had failed to plausibly allege that the Prudential Defendants breached their fiduciary duties of prudence and loyalty.  *Id.* at 18-26.  Specifically, the Court found that Plaintiff had not alleged sufficient facts showing that the Prudential Defendants charged excessive fees for certain funds because the single comparator fund was not "a meaningful benchmark."  *Id.* at 18-20.  The Court also considered Plaintiff's allegations that certain funds underperformed when compared to their own benchmarks; those claims were also insufficiently

---

[4] The Individual Defendants named in the Amended Complaint included Ellen Borak, Tina Cawley, Thomas Laurita, Patrick Lynch, Joseph Machewirth, Lynn McTaggart, Kevin Prue, and Scott Ramsay, who are not named as Individual Defendants in the SAC.  D.E. 53 ¶¶ 26-31, 33-34.

plead because Plaintiff did not allege that Defendants had the relevant information at the time investment decisions were made, the time period at issue was relatively short, and the alleged underperformance was not sufficiently substantial. *Id.* at 20-21. The Court further found that Plaintiff's allegations that Defendants should have removed two of the challenged funds from the Plan earlier than they did were too conclusory to show that a prudent fiduciary in like circumstances would have removed the funds. *Id.* at 21. Additionally, Plaintiff's claims regarding Defendants' selection of Prudential-affiliated funds and administrative fees were dismissed because Plaintiff offered only cursory allegations and did not compare these practices to those of similarly situated fiduciaries. *Id.* at 22. Finally, the Court dismissed Plaintiff's claims relating to GoalMaker because it found that the Prudential Defendants were not fiduciaries of the Plan with regard to GoalMaker. *Id.* at 23.

The Court went on to dismiss Plaintiff's prohibited transactions claims because Plaintiff had insufficiently plead that the Prudential Defendants had an intent to benefit a party in interest and that the investment management fees paid to Prudential and its affiliates were anything more than previously bargained-for compensation. *Id.* at 27-29. Because Plaintiff had failed to plead any underlying breach of fiduciary duties, the Court also dismissed Plaintiff's failure to monitor and breach of trust claims. *Id.* at 29-30.

On October 27, 2021, Plaintiff filed the SAC, which contains four counts. D.E. 106. Count I alleges that Defendants breached their fiduciary duties. *Id.* ¶¶ 108-111. Counts II and III allege that Defendants engaged in prohibited transactions with a party-in-interest and Plan fiduciaries. *Id.* ¶¶ 112-123. Count IV alleges that Prudential and the Investment Oversight Committee breached their fiduciary monitoring duties. *Id.* ¶¶ 124-131. The current motions followed. D.E. 112, 114.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

The Prudential Defendants argue that the SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing to bring claims related to Goalmaker or the allegedly inaccurate participant data.  Prudential Br. at 27-29.  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint.  A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Id.* at 346 (quoting *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  "When a factual challenge is made, the plaintiff will have the burden of proof that jurisdiction does in fact exist, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citations omitted).

Defendants first argue that Plaintiff's allegations are insufficient to establish standing to challenge the GoalMaker program and allegedly inaccurate information posted on the Plan's online portal.  Prudential Br. at 27-29.  These arguments constitute a facial attack, and accordingly, "the Court must consider the allegations of the complaint as true" as to those claims.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Rule 12(b)(6)

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6), pursuant to which a count may be dismissed for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, Civ. No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    ANALYSIS

#### A.  Article III Standing

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2.  To meet the case-or-controversy requirement, a plaintiff must show that he has standing to sue.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358-59 (3d Cir. 2015)).  An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1.  A concrete injury refers to one that actually exists: one that is real and not abstract.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).  In addition, "[t]he injury must be concrete in both a qualitative and temporal sense[.]"  *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The Court previously declined to rule on whether Plaintiff had standing to bring claims relating to GoalMaker or the allegedly inaccurate information provided to Plan participants after Plaintiff was no longer a Plan participant.  Opinion at 12.  However, the Court pointed to concerns about Plaintiff's ability to bring such claims.  *Id.* at 10-12.  Specifically, the Court noted that Plaintiff had not alleged that he personally participated in GoalMaker, an optional asset allocation tool managed by a third party that served as the Plan's Qualified Default Investment Alternative

("QDIA").[5]  *Id.* at 10-11.  The Court also observed that while the Amended Complaint alleged that erroneous data was provided via the Plan's online participant portal starting in January 2020, Plaintiff's Plan participation ended on March 20, 2019.  *Id.* at 10.  The Court took note of various decisions suggesting that a plaintiff bringing ERISA claims has standing to bring claims causally related to the conduct that harmed him, but which extend beyond the scope of his personal injury, but highlighted that Plaintiff had not alleged how his individual injury resulting from investments in certain Plan funds was causally related to GoalMaker or the misinformation provided to Plan participants.  *Id.* at 11 n.5.

The Prudential Defendants again contend that Plaintiff lacks standing to bring claims relating to GoalMaker because he cannot show that he suffered a concrete and particularized injury from the tool.  Prudential Br. at 28.  Defendants first highlight that Cho himself never utilized GoalMaker.  *Id.*  Plaintiff does not contest that he did not personally participate in GoalMaker but maintains that he nonetheless has standing to bring the claims at issue because his injuries "arise from the *exact* conduct underlying the GoalMaker claims."  Opp. to Prudential Br. at 31 (emphasis in original).  Namely, Plaintiff argues that the "same deficient process and disloyalty which resulted in Defendants' selecting and retaining imprudent, largely affiliate investments resulted in the set of investments from which GoalMaker portfolios are constructed."  *Id.* at 30.  Plaintiff also notes that "courts look to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan *as a whole*."  *Hay v. Gucci Am., Inc.*, Civ. No. 17-07148, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) (internal quotation omitted) (emphasis in original).

---

[5] A Qualified Default Investment Alternative is an investment offering, or a service substituting for an investment offering, in which a plan participant's assets are automatically invested if the participant does not direct where his or her assets should be invested.  *See* SAC ¶ 84, p. 37.

Plaintiff sufficiently pleads that the GoalMaker claims he seeks to bring on behalf of Plan participants as a whole are causally related to the claims arising from his own Plan participation. For example, Plaintiff alleges that Defendants advanced their interests through GoalMaker by disproportionately allocating participant funds to investments managed by Prudential or its affiliates. SAC ¶ 83, p. 36. This is the same wrongful conduct alleged as to Defendants' fund selections for the Plan as a whole. *See*, *e.g.*, *id.* ¶ 9 ("Defendants violated ERISA by overpopulating the Plan with proprietary mutual funds offered by Prudential and its affiliates"). In addition, Plaintiff challenges the Fixed Rate Fund in both his GoalMaker claims and his claims regarding the inclusion of Prudential-affiliated funds in the Plan. *Compare id.* ¶ 88 ("[GoalMaker's] ability to generate substantial returns is hampered by the profusion of Prudential products, including the [Fixed Rate Fund][.]") *with id.* ¶¶ 91-92 (alleging that "at least half of the funds offered to participants were Prudential-affiliated funds," including the Fixed Rate Fund, "which provided millions of dollars of revenue for Prudential" and many of which "were unnecessarily expensive, consistently and considerably underperformed compared to their respective benchmarks, or both"). Plaintiff also alleges that Defendants failed to investigate whether Plan participants would be better served by adding a suite of target date funds[6] to the investment menu in lieu of GoalMaker, and that such failure was "because the GoalMaker service directs millions of participant dollars into Prudential products." SAC ¶ 85. Similarly, as to conduct giving rise to Plaintiff's personal injury, Plaintiff alleges that Defendants "encourage[d] participants to direct billions of dollars of their assets into Prudential-affiliated proprietary funds,"

---

[6] Plaintiff describes a target date fund as "an all-in-one retirement solution that serves the same function as GoalMaker, providing simple asset allocation through a portfolio of underlying funds that gradually shifts to become more conservative as the year of retirement approaches." SAC ¶ 85 n.5. Plaintiff also alleges that target date funds are "by far the most widely utilized QDIA in defined contribution plans." *Id.* ¶ 85.

even though they "knew, or should have known…that better-performing, lower-cost, comparable investments were readily available from unaffiliated entities." *Id.* ¶¶ 52-53.  The SAC further claims that the Investment Oversight Committee was provided the GoalMaker returns at quarterly meetings, but the committee members "made no attempt" to investigate how GoalMaker returns compared to returns achievable through alternative options; had they made such a comparison, Plaintiff continues, they would have found that Plan participants' retirement savings "would be significantly better off" invested in the alternative funds.  *Id.* ¶ 86.  Again, this is the same course of conduct alleged to give rise to Plaintiff's personal injury with regard to the underperforming funds.  *See id.* ¶¶ 65-81 (alleging that Defendants were regularly furnished with information showing fund underperformance but ignored the underperformance and failed to act).  Because Plaintiff's GoalMaker claims are causally related to the conduct that allegedly caused Plaintiff's personal injury, Plaintiff has standing to bring such claims.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (noting that a plaintiff may seek relief under ERISA that "sweeps beyond his own injury" and finding that the plaintiff had standing "for the simple reason that [he] has alleged injury in fact that is *causally related* to the conduct he seeks to challenge on behalf of the Plan") (emphasis added); *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 132 (3d Cir. 2022) ("Article III does not prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly imprudent due to the same decisions or courses of conduct.")[7]; *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 792 (D. Minn. 2018) (finding that

---

[7] In *Boley*, the plaintiffs challenged a plan with investment options comprised of 37 funds as well as the Fidelity Freedom Fund suite, the plan's Qualified Default Investment Alternative consisting of 13 target date funds.  *Id.* at 128.  The named plaintiffs invested in 7 of the plan's 37 investment options and were charged the annual recordkeeping and administrative fees charged to all plan participants.  *Id.*  The plaintiffs alleged that the defendants breached their fiduciary duty by including the "excessively expensive" Fidelity Freedom Fund suite in the plan; charging excessive recordkeeping and administrative fees; and employing an imprudent evaluation process, resulting

the plaintiffs who invested in certain options but not the mutual fund window had standing to bring a claim against the entire plan "because there is clearly a common question of both fact and law") (internal citation omitted).

Defendants additionally argue that Plaintiff's "speculation [regarding GoalMaker] that participants may have been steered into certain funds is not the type of concrete injury that establishes standing." Prudential Br. at 28. The Court disagrees. Plaintiff's claim that Defendants offered GoalMaker as the default investment option rather than an alternative, such as a target date fund, which would have yielded better investment results is sufficient to allege a concrete injury. *See Boley*, 36 F.4th at 132 (finding that the plaintiffs alleged a concrete injury arising from the defendants' alleged imprudence in choosing and evaluating investment options offered to the plan participants, which resulted in an excessively expensive investment menu).

Defendants also argue that Plaintiff has not established injury-in-fact relating to alleged misinformation provided to Plan participants because he has not alleged that "anyone read, relied upon, or was injure by any of the allegedly defective information when it was available." Br. at 28-29. Plaintiff does not refute this argument, and the SAC merely alleges in a conclusory fashion that Defendants' "failure to provide complete and accurate data and information caused harm to

---

in the selection of excessively expensive investment options. *Id.* at 131. The defendants conceded that the plaintiffs had standing to challenge the recordkeeping and administrative costs, *id.*, but challenged their standing to bring claims relating to funds in which they did not personally invest, *id.* at 129. The Third Circuit found that the plaintiffs had standing to challenge the Fidelity Freedom Fund suite because they each invested in at least one of the Fidelity Freedom Funds and alleged that all of the funds in the suite were imprudent for the same reasons. *Id.* at 131. Similarly, the plaintiffs had standing to bring claims regarding the defendants' imprudent evaluation process because each plaintiff invested in at least one fund with allegedly excessive fees and thus adequately plead an injury from the challenged process. *Id.* at 131-32. The *Boley* court noted that the plaintiffs had alleged concrete injuries traceable to the defendants' challenged decisions and courses of conduct, which affected the challenged funds and the plan participants in the same way. *Id.* at 132. Thus, the plaintiffs established standing by showing "a constitutionally adequate injury flowing from those decisions or failures." *Id.* at 132.

the Plan and all participants…because it impaired [their] ability to timely access accurate information and make fully informed investment decisions, including which funds to invest in and at which concentrations." SAC ¶ 97. This vague claim is insufficient to allege an injury-in-fact to Plaintiff or any other Plan participant. *See Spokeo*, 578 U.S. at 339-40 (a concrete injury must actually exist and cannot be merely abstract, conjectural, or hypothetical); *see also Anderson v. Intel Corp.*, Civ. No. 19-04618, 2021 WL 229235, at *14 (N.D. Cal. Jan. 21, 2021) (holding that the plaintiffs had failed to allege an injury-in-fact traceable to the defendants' alleged failure to provide accurate and complete information in plan disclosures because the plaintiffs had not alleged that they read any of the allegedly defective documents or relied upon those documents). Thus, as pled, Plaintiff does not have standing to bring claims relating to the alleged misinformation provided to Plan participants.

### B. Group Pleading

The Individual Defendants and Bellwether argue that Plaintiff's claims against them should be dismissed as impermissible group pleading because Plaintiff fails to specify the wrongful conduct that each engaged in. Prudential Br. at 26-27; Bellwether Br. at 9-12. Mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, Civ. No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* A complaint that contains "impermissibly vague group pleading" will be dismissed. *Falat v. County of Hunterdon*, Civ. No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original).

The Court previously dismissed Plaintiff's claims against the Individual Defendants and Bellwether because Plaintiff broadly attributed misconduct to all Defendants without providing

14

specific allegations as to how the Individual Defendants or Bellwether had engaged in wrongdoing. Opinion at 12-13.  Plaintiff now identifies the specific meetings that each Individual Defendant attended and alleges that each "was put on notice of the poor performance of the [challenged funds], but failed to suggest any further analysis or act to remove any of the imprudent investment options from the Plan lineup."  SAC ¶¶ 24-28 (listing the meetings that each Individual Defendant attended).  Similarly, the SAC specifies that Bellwether prepared quarterly reports for the Investment Oversight Committee and attended committee meetings but failed to recommend further scrutiny or remedial action following periods of fund underperformance.  *Id.* ¶¶ 62-81. These specific allegations as to the Individual Defendants' and Bellwether's particular roles in selecting and retaining the allegedly underperforming funds sufficiently cure the deficiencies previously noted by the Court.  Thus, as to the fund underperformance claims, Plaintiff has cured the group pleading deficiency identified in the Court's prior Opinion.

However, Plaintiff's remaining claims regarding GoalMaker, the Fixed Rate Fund, and Prudential-affiliated funds attribute misconduct to all "Defendants" generally without specifying the alleged wrongdoing by Bellwether or the Individual Defendants.  *See*, *generally*, SAC ¶¶ 82-95.  Thus, Plaintiff's remaining claims against the Individual Defendants and Bellwether are dismissed for impermissible group pleading.  *See D'Addario v. Johnson & Johnson*, Civ. No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) (dismissing claims for impermissible group pleading because "Plaintiffs' Complaint broadly alleges Defendants' misconduct but fails to allege the conduct for which each defendant is culpable").

**C. Breach of the Fiduciary Duties of Prudence and Loyalty (Count One)[8]**

The Court now turns to Plaintiff's breach of fiduciary duty claims. ERISA's fiduciary duties are governed by 29 U.S.C. § 1104; "ERISA fiduciaries are required to act according to duties of prudence and loyalty to Plan participants." *In re Quest Diagnostics*, Civ. No. 20-07936, 2021 WL 1783274, at *3 (D.N.J. May 4, 2021). These duties require fiduciaries to "act with the 'care, skill, prudence, and diligence under the circumstances' that would be expected of a prudent man, and do so 'in the interest of the participants and beneficiaries' and 'for the exclusive purpose' of 'providing benefits to [them]' while 'defraying reasonable expenses of administering the plan.'" *Id.* (alteration in original) (quoting 29 U.S.C. § 1104(a)(1)(A)-(B)). "To assert a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege that: '(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan.'" *Peterson v. Ins. Servs. Office, Inc.*, Civ. No. 20-13223, 2021 WL 1382168, at *3 (D.N.J. Apr. 13, 2021) (quoting *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012)).

**1. Duty of Prudence**

"Under § 1104(a), fiduciaries are held to the prudent [person] standard of care, which is drawn from trust law." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 327 (3d Cir. 2019) (citing *Tibble v. Edison Int'l*, -- U.S. --, 135 S. Ct. 1823, 1828 (2015)). "A fiduciary must prudently select investments, and failure to 'monitor . . . investments and remove imprudent ones' may constitute a breach." *Id.* at 328 (alteration in original) (citing *Tibble*, 135 S. Ct. at 1828-29). Additionally, fiduciaries "must . . . understand and monitor plan expenses." *Id.* "'Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in

---

[8] Bellwether joins in the Prudential Defendants' arguments to dismiss Plaintiff's breach of fiduciary duty claims. *See* Bellwether Br. at 20-21.

a defined-contribution plan,' by decreasing its immediate value, and by depriving the participant

of the prospective value of funds that would have continued to grow if not taken out in fees." *Id.*

(internal citation omitted) (quoting *Tibble*, 135 S. Ct. at 1826). "Fiduciaries must also consider a

plan's 'power . . . to obtain favorable investment products, particularly when those products are

substantially identical – other than their lower cost – to products the trustee has already selected.'"

*Id.* at 328-29 (alteration in original) (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir.

2019)).

> To determine whether a fiduciary breached its duty of prudence, courts look to "process
rather than results" and inquire "whether a fiduciary employed the appropriate methods to
investigate and determine the merits of a particular investment." *Id*. at 333.  "To survive a motion
to dismiss, however, Plaintiffs need not 'directly allege how [Defendants] mismanaged the Plan,'
so long as there is 'substantial circumstantial evidence' to permit the Court to 'reasonably infer
that a breach had occurred.'"  *Silva v. Evonik Corp.*, Civ. No. 20-2202, 2020 U.S. Dist. LEXIS
250206, at *9 (D.N.J. Dec. 30, 2020) (alteration in original) (quoting *Sweda*, 923 F.3d at 332).
However, Plaintiffs who rely on "circumstantial evidence must . . . provide a sound basis for
comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would
have selected a different fund." *Id.* (internal quotations omitted).

> In reviewing a complaint, a court "may not parse [it] 'piece by piece to determine whether
each allegation, in isolation is plausible.'"  *Id.* (quoting *Sweda*, 923 F.3d at 221).  "Instead, the
Court employs a 'holistic approach' by considering all well-pleaded, non-conclusory allegations,
including the 'range of investment options,' 'reasonableness of fees,' 'selection and retention of
investment options,' and 'practices of similarly situated fiduciaries.'"  *Id.* (quoting *Sweda*, 923
F.3d at 331).

### a. Fund Underperformance

The SAC brings claims relating to the same five Plan funds challenged in the Amended Complaint. *Compare* Amended Complaint ¶¶ 85-94 *with* SAC ¶¶ 65-81. The Court previously found that Plaintiff had failed to plausibly allege that Defendants imprudently selected and retained the challenged funds because he compared each challenged fund to a *single* corresponding fund alleged to have a similar management style, which did not provide a "meaningful benchmark" for comparison. Opinion at 18-19 (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018)). The Court also found that Plaintiff's allegations were "improperly based on hindsight," because Plaintiff had not alleged "the information available to Defendants at a particular point in time when retention decisions were made." *Id.* at 20. Further, in comparing the challenged funds to their own benchmarks, Plaintiff relied primarily on five-year trailing data, which the Court deemed a "fairly short" time period. *Id.* The Court additionally noted that Plaintiff had not alleged that the underperformance was sufficiently substantial and that the challenged funds had outperformed their benchmarks on several occasions. *Id.* at 21.

The SAC cures the hindsight issues previously flagged by the Court by providing allegations that Defendants received information about the challenged funds' underperformance in real time throughout the Class Period but failed to act upon this information. SAC ¶¶ 65-81. Specifically, Plaintiff claims that the Investment Oversight Committee was "regularly furnished" with the Prudential Retirement Real Estate Fund's poor performance data, including at meetings on September 12, 2016; December 7, 2016; and March 1, 2017, but "neglected to follow a prudent investment evaluation process and ignored this negative trend." *Id.* ¶¶ 65-66. Plaintiff also claims that the Investment Oversight Committee was "regularly furnished" with data concerning the Prudential High Yield Collective Investment Trust's "significant and prolonged periods of

underperformance" compared to its benchmark and other high yield mutual funds, including at its meeting on December 1, 2014, *id.* ¶¶ 68-69; however, this information provided "every quarter" was ignored, *id.* ¶ 70. Similarly, the SAC alleges that information about the "substantial and consistent underperformance" of the Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio was provided to the Investment Oversight Committee every quarter beginning on September 8, 2017—shortly after the fund was added to the Plan's investment lineup in June 2017—but every quarter, the committee "refused to act upon materials reflecting the Portfolio's underperformance." *Id.* ¶¶ 71-73. In providing these specific allegations, Plaintiff now properly focuses on information available to the Investment Oversight Committee at the time it made its investment decisions. *See* Opinion at 17-18, 20 (observing that allegations based on hindsight do not meet the plausibility requirement).

Moreover, Plaintiff's claims regarding the information available to the Investment Oversight Committee about the challenged funds' performance appropriately addresses the fiduciary process and "whether [Defendants] employed the appropriate methods to investigate and determine the merits of a particular investment." *Sweda*, 923 F.3d at 329 (internal quotation and alterations omitted). Defendants argue that the underperformance claims should be dismissed because Plaintiff has not alleged that "Prudential failed to follow the fiduciary process set forth in the [Plan's Investment Policy Statement] for monitoring underperformance," and "[t]he very records [Plaintiff] relies on…demonstrate that Prudential regularly reviewed fund performance." Prudential Br. at 12. But the argument that Defendants "did in fact employ a prudent process…goes to the merits and is misplaced at this early stage." *Sweda*, 923 F.3d at 333; *see also Moreno v. Deutsche Bank Americas Holding Corp.*, Civ. No. 15-9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) (holding that the defendants' factual assertions "contest[ing] the

plausibility of the allegation that the proprietary funds were underperforming…raise factual issues that cannot be resolved at the motion to dismiss stage").

Additionally, Plaintiff now cites to more than a single alternative fund as a comparator to demonstrate that the challenged funds were imprudently selected.  For instance, he compares the Prudential Retirement Real Estate Fund to a passively managed Vanguard Real Estate Index Fund and an actively managed Cohen & Steers Institutional Realty Shares Fund.  SAC ¶ 67.  Similarly, Plaintiff compares the Prudential High Yield Collective Investment Trust to a Vanguard High Yield Corporate Fund and an actively managed BlackRock High Yield Bond Fund, *id.* ¶ 70; and the Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio to a Vanguard Inflation Protected Securities Fund and an actively managed PIMCO Real Return Fund, *id.* ¶ 73.  Defendants argue that the three additional funds cited in the SAC are "not appropriate comparators because they have different aims, different risks, and different potential rewards that cater to different investors."  Prudential Br. at 10-11 (internal quotations omitted).  However, these deeper factual inquiries into proper benchmarks are "unsuitable for resolution on a motion to dismiss." *Luense v. Konica Minolta Bus. Sols. USA, Inc*., 541 F. Supp. 3d 496, 512 (D.N.J. 2021).  Moreover, the newly provided comparator funds are, like the challenged funds, all actively managed; thus, Plaintiff has "plausibly establish[ed] that [he] is providing an apt comparator."  Opinion at 18 n.7.[9]

---

[9] After briefing was completed, the Prudential Defendants submitted a notice of new supplemental authority to the Court regarding a recent Sixth Circuit decision: *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022).  D.E. 126.  In *Smith*, the Sixth Circuit considered the plaintiff's allegations that the defendant had breached its duty of prudence by offering several actively managed investment funds when available index funds offered higher returns and lower fees and by charging excessive recordkeeping and management fees.  37 F.4th at 1164.  The Prudential Defendants point to the *Smith* court's admonition that comparison "can be the thief of accuracy when it comes to two funds with separate goals and separate risk profiles."  *Id.* at 1167.  However, as noted, Plaintiff here provides comparisons to other actively managed funds as well as passive funds to support his underperformance claims.

However, despite referencing additional comparator funds, Plaintiff fails to provide specific allegations showing that those funds outperformed their challenged counterparts. For instance, Plaintiff claims that the Cohen & Steers Institutional Realty Shares Fund "consistently ranked among the best performing real estate funds throughout the Class Period," but does not provide any detail on its performance vis-à-vis the Prudential Retirement Real Estate Fund. SAC ¶ 67. Similarly, Plaintiff merely alleges that the BlackRock High Yield Bond Fund "consistently ranked among the best performing real estate funds throughout the Class Period," without offering any specific comparisons between its performance and that of the Prudential High Yield Collective Investment Trust. *Id.* ¶ 70. Plaintiff commits the same error in comparing the Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio with the PIMCO Real Return Fund. *Id.* ¶ 73. Thus, the Court is again left with only details of each challenged fund against a single passively managed Vanguard fund that outperformed the challenged fund.[10] But as the Eighth Circuit observed, and as the Court highlighted in its previous Opinion, "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset." *Meiners*, 898 F.3d at 823; *see also Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Nor does a showing of imprudence come down to simply pointing to a fund with better performance.").

Further, Plaintiff again "has not alleged that the [challenged funds'] underperformance was sufficiently substantial." Opinion at 21. Measured on a three-year and five-year basis,[11] the

---

[10] Notably, Plaintiff fails to even allege that the Vanguard Inflation Protected Securities Fund outperformed the Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio to which it is compared. *See* SAC ¶ 73.

[11] Defendants note that Plaintiff again relies on three- and five-year performance data, despite the Court's observation that this is considered a relatively short period of underperformance. Prudential Br. at 12 n.6 (citing Order at 20-21). However, Plaintiff now alleges that three- and

challenged funds underperformed their benchmarks in the range of 0.28% and 0.77%. SAC ¶¶ 65-72. "[S]uch a small disparity in performance relative to [the challenged funds'] benchmark[s] does not support the inference that Defendants were imprudent to retain the [challenged funds] in the set of Plan offerings." *Patterson v. Morgan Stanley*, Civ. No. 16-6568, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (noting that a "difference of less than one percentage point is certainly insubstantial" compared to scenarios in which courts have found underperformance sufficient to support a duty of prudence claim). Moreover, as Defendants note and Plaintiff concedes, the challenged funds outperformed their benchmarks in certain quarters. *See* Prudential Br. at 12; Opp. to Prudential Br. at 14. These periods of outperformance undercut Plaintiff's allegations of imprudence. *See Smith*, 37 F.4th at 1168 (finding that a period of outperformance supported that "there were prudent reasons" to offer the challenged fund). In sum, Plaintiff has not plausibly alleged that the Prudential Retirement Real Estate Fund, Prudential High Yield Collective Investment Trust, or Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio underperformed in relation to comparator funds or their own benchmarks such that a prudent fiduciary would have found them "so plainly risky as to render the investments in them imprudent." *Patterson*, 2019 WL 4934834, at *10. Accordingly, Plaintiff's duty of prudence claims relating to the alleged underperformance of these funds are dismissed.

Plaintiff also claims that Defendants acted imprudently by failing to timely remove the Jennison Opportunistic Equity Collective Investment Trust and Wells Capital International Bond Institutional Select Fund. *Id.* ¶¶ 74-81. Plaintiff alleges that the Jennison Opportunistic Equity Collective Investment Trust "ranked poorly in both return and risk measurements" at the time

---

five-year returns are generally regarded as "the most important metrics for evaluating whether investment options should be maintained in a retirement plan lineup." SAC ¶ 63. Accepting this allegation as true, the Court does not dismiss on this basis.

Defendants added it to the Plan lineup, but the Investment Oversight Committee selected the fund "in spite of the statistical measurements, available to the fiduciaries in real time, suggesting that the [fund] was not the best choice for Plan participants." *Id.* ¶ 74. Plaintiff continues that every quarter starting from the August 27, 2015 meeting shortly after the fund was added to the Plan, the Investment Oversight Committee was provided with charts showing the fund's underperformance in the most recent 20 quarters. *Id.* ¶¶ 75-77. Despite the underperformance, Defendants did not remove the fund from the Plan lineup until December 7, 2018, over three years after it was added. *Id.* Similarly, Defendants allegedly failed to remove the Wells Capital International Bond Fund from the Plan lineup "despite consistently poor returns that should have seen it jettisoned long before it was ultimately removed." *Id.* ¶ 79. The SAC alleges that the Investment Oversight Committee was provided with, but ignored, information regarding the fund's poor performance every quarter until finally replacing the fund on December 7, 2018 "at least six quarters" after the decision should have been made. *Id.* ¶ 81. Defendants argue that "the documents [Plaintiff] relies on show the [Investment Oversight Committee] followed the [Investment Policy Statement] in monitoring these funds" and that the committee removed funds "at appropriate points." Prudential Br. at 13-14. However, so long as a claim for untimely removal is plausibly plead, whether a fund was timely removed is a question of fact. *See* Opinion at 21; *Luense*, 541 F. Supp. 3d at 513 ("Whether removing several funds satisfies the duty of prudence is ultimately a question on the merits."). Here, the SAC sufficiently alleges that the Prudential Defendants breached their duty of prudence by failing to remove the two funds discussed above at an earlier time. Therefore, Plaintiff's claims regarding the untimely removal of the Jennison Opportunistic Equity Collective Investment Trust and Wells Capital International Bond Institutional Select Fund may proceed.

23

Plaintiff, however, has not plausibly plead that Bellwether breached its duty of prudence in relation to the challenged funds.  The SAC alleges that Bellwether "provided periodic reporting to the Investment Oversight Committee and Prudential but failed to apply a rigorous process to ensure that only prudent investments would be maintained in the Plan" and "fail[ed] to specifically recommend the timely removal and replacement of [the challenged funds]" in breach of its fiduciary duties.  SAC ¶ 31.  Plaintiff nevertheless fails to provide anything more than a handful of conclusory claims in support of this contention.  Specifically, Plaintiff's allegations regarding Bellwether's fiduciary duty breaches are limited to reiterating, for all five challenged funds, the following:

(1) "Bellwether provided the materials and information discussed at the [Investment Oversight Committee] meeting but failed to recommend any further scrutiny of the [challenged fund] or other remedial action." *Id.* ¶¶ 65, 66, 69, 72;

(2) "Bellwether acknowledged the [challenged fund's] underperformance but failed to recommend any further scrutiny…or other remedial action." *Id.* ¶¶ 71, 74, 76, 79, 80.

Plaintiff also claims with regard to the Jennison Opportunistic Equity Collective Investment Trust that "Bellwether advised the Investment Oversight Committee that no action was necessary" despite data showing underperformance in 13 of the 20 most recent quarters. *Id.* ¶¶ 77-78.  These claims are insufficient to demonstrate that Bellwether improperly conducted itself "in arriving at [a]…decision" or failed to "employ[] the appropriate methods to investigate and determine the merits of particular investment." *Sweda*, 923 F.3d 320, 329 (first and second alteration in original).  As such, the Court cannot reasonably "infer from what is alleged that the process was flawed." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011).  Thus, Plaintiff fails to state a breach of fiduciary duty claim against Bellwether.

24

### b.  Inclusion of Affiliated Funds

Plaintiff also alleges that Defendants breached their fiduciary duties by including an excessive amount of Prudential-affiliated funds in the Plan, "which provided millions of dollars of revenue for Prudential and its affiliates and subsidiaries" in the form of investment management fees.  SAC ¶¶ 91-95.  The Court previously dismissed Plaintiff's same claims because he failed to provide any comparisons to the practices of similarly situated fiduciaries or other specific allegations that could support an inference of imprudence.  Opinion at 22.  In so finding, the Court noted that the Third Circuit had found that allegations regarding excessive administrative fees were adequate where the plaintiff alleged that the plan at issue paid between $4.5 and $5.5 million in annual fees when four similar plans paid between $700,000 and $750,000 for the same services. *Id.* at 22-23 (citing *Sweda*, 923 F.3d at 330-31).

The Prudential Defendants argue that the SAC still does not provide sufficient comparisons.  Prudential Br.. at 15.  The Court agrees.  Plaintiff merely alleges in a conclusory fashion that "[p]rudent fiduciaries would have investigated alternative available investments in order to maximize the Plan's retirement assets" while the Prudential Defendants "simply offered Prudential products because they were familiar options that provided additional benefits to Prudential and its affiliates."  SAC ¶ 94.  Standing alone, this allegation is insufficient for pleading purposes.

### c.  GoalMaker

The SAC also brings claims relating to GoalMaker, an optional asset allocation tool provided to Plan participants that served as the Plan's QDIA.   The Court previously found that Plaintiff had not adequately pled his claims because the Prudential Defendants were not fiduciaries of GoalMaker.  Opinion at 23-24.  In so finding, the Court indicated that the Plan's Summary Plan

Document indicated that Mesirow, an independent consultant unaffiliated with Prudential, was responsible for developing the GoalMaker portfolios. *Id.* at 23. The Prudential Defendants argue that the Court should again reach the same conclusion. Prudential Br. at 17-18 (citing SAC ¶ 83, p. 35).

"[A]n entity is only a[n ERISA] fiduciary to the extent it possesses authority or discretionary control over the plan." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011). Whether a party is a fiduciary is a "highly fact intensive inquiry" that depends on the particular function exercised by that party. *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 469 (D.N.J. 2008). Accordingly, this determination is not typically resolved at the motion to dismiss stage. *Beye v. Horizon Blue Cross Blue Shield of New Jersey*, 568 F. Supp. 2d 556, 576 (D.N.J. 2008). Previously, Plaintiff failed to plead any facts that could support an inference that Defendants exercised authority or discretionary control over the creation of GoalMaker portfolios. The SAC, however, provides new allegations as to Defendants' role in the selection of GoalMaker portfolio funds. Plaintiff now claims that "Defendants select the limited universe of investment options from which [Mesirow] creates [GoalMaker] portfolios." SAC ¶ 83, p. 35. Plaintiff further alleges that "Defendants actively influence the concentrations of [participant] dollars within GoalMaker." *Id.* ¶ 84, p. 36. These allegations "create at least a plausible inference that [Defendants] exercised sufficient control to qualify as a fiduciary." *Drzala v. Horizon Blue Cross Blue Shield*, Civ. No. 15-8392, 2016 WL 2932545, at *5 (D.N.J. May 18, 2016) (finding that the plaintiff had met the "low bar" of plausibly alleging that the defendant was an ERISA fiduciary and noting that whether the defendant acted in a non-discretionary role or a fiduciary role "would require the Court to engage in fact-finding beyond that which is permissible at this stage of the matter"). Thus, the

Court will not dismiss Plaintiff's GoalMaker claims based on the Prudential Defendants' fiduciary status.

The Court next considers whether Plaintiff has plausibly alleged a breach of fiduciary duty as to GoalMaker.  Plaintiff claims that GoalMaker "advanced the interests of Defendants by disproportionately allocating participant funds to investments managed by Prudential or its affiliates."  SAC ¶ 83, p. 36.  Plaintiff continues that Defendants "failed to investigate whether Plan participants would be better situated with the addition of a suite of target date funds, by far the most widely utilized QDIA in defined contribution plans[.]"  *Id.* ¶ 85.  The SAC then compares the performance of the Conservative GoalMaker portfolio, the Plan's default investment option, against the performance of Vanguard, American Funds, and T. Rowe Price target date funds.  *Id.* This comparison shows that the Conservative GoalMaker portfolio underperformed the three comparison funds by 2.32% to 3.78% for the relevant time period.  *Id.*  According to Plaintiff, had Defendants investigated how GoalMaker returns compared to returns available through alternative options, "they would have found that the retirement savings of Plan participants would be significantly better off invested in any of the above target date funds."  *Id.* ¶ 86.  Plaintiff additionally alleges that GoalMaker's inclusion of the Fixed Rate Fund, a proprietary stable value fund, hampered GoalMaker's ability to generate substantial returns; in support, Plaintiff cites to a study finding that the Plan's concentration of assets in the Fixed Rate Fund was "a red flag."  *Id.* ¶¶ 88-89.  According to Plaintiff, "Defendants were incentivized to steer participant dollars into the fund," because it generated significant revenues for Prudential.  *Id.* ¶ 90.

These allegations are sufficient to support an inference that Defendants breached their duty of prudence.  As in *Sweda*, Plaintiff offers "specific comparisons between returns on [GoalMaker] and readily available alternatives," namely three target date funds.  923 F.3d at 332; *see* SAC ¶ 85.

Plaintiff also alleges that target date funds are "by far the most widely utilized QDIA in defined contribution plans," SAC ¶ 85, which supports an inference that similarly situated fiduciaries may have selected a target date fund rather than GoalMaker as the default investment option. Plaintiff's claim that the Investment Oversight Committee was provided with GoalMaker's returns every quarter but did not investigate how those returns compared to the performance of alternative asset allocation options, *id.* ¶ 86, also supports an inference that Defendants did not execute their fiduciary duties with the required prudence. *See Sweda*, 923 F.3d at 329 ("[A] court assesses a fiduciary's performance by looking at process" and "focusing on a fiduciary's conduct in arriving at a decision and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.") (internal quotation and alterations omitted). Plaintiff's claims are also supported by his allegations that GoalMaker included a "profusion of Prudential products," including the Fixed Rate Fund, which may have led to subpar returns. *Id.* ¶ 88. Defendants argue that there were "good reasons" to allocate assets to the Fixed Rate Fund, and that the Investment Oversight Committee's materials show that Prudential did consider whether a target date fund would serve Plan participants better than GoalMaker. Prudential Br. at 19-20. However, the argument that Defendant "did in fact employ a prudent process…goes to the merits and is misplaced at this early stage." *Sweda*, 923 F.3d at 333. Thus, the Court will not dismiss Plaintiff's GoalMaker claims.

### 2. Duty of Loyalty

ERISA fiduciaries are also subject to a duty of loyalty requiring fiduciaries to act "with an eye single toward beneficiaries' interests." *McGowan v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870, at \*7 (D.N.J. Apr. 13, 2021) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)). "To plead a loyalty claim, courts look for allegations suggesting that the

fiduciary made decisions benefitting itself or a third party." *Id.* "Accordingly, a plaintiff may not simply 'recast' a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit." *Silva*, 2020 U.S. Dist. LEXIS 250206, at *19. The Court previously ruled that, among other things, Plaintiff had not sufficiently plead that the Prudential Defendants acted with an improper motive or for an improper financial benefit. Opinion at 25.

Plaintiff again fails to sufficiently allege a breach of the duty of loyalty. Plaintiff points to no new allegations in the SAC supporting an improper motive or financial benefit. Rather, Plaintiff merely points to the same allegations relating to the inclusion and retention of affiliated funds that underly his duty of prudence claims. *See* Opp. to Prudential Br. at 23. But to state a claim for breach of the duty of loyalty, "a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *Sacerdote v. New York Univ.*, Civ. No. 16-6284, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) (vacated on other grounds). Further, Plaintiff does not cite to any authority showing that his allegations regarding affiliated funds are sufficient to state a breach of duty of loyalty claim. In fact, the court in *Cunningham v. Cornell Univ.*, Civ. No. 16-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017), found that similar allegations "do not support an inference that defendants' actions were for the purpose of providing benefits to themselves or someone else and did not simply have that incidental effect." *Id.* at * 4. There, the court dismissed the plaintiff's duty of loyalty claims that were premised on allegations that the defendants allowed a third-party service provider to mandate inclusion of its own funds in the plan, which provided a steady stream of revenue in recordkeeping fees; allowed third-party service providers to include their proprietary investments in the plans without scrutinizing their financial interests in doing so; and failed to make investment decisions based solely on the merits of the investment funds. *Id.*

Similarly, Plaintiff fails to plead that any benefits resulting from the inclusion of Prudential-affiliated funds were more than just incidental.  Thus, Plaintiff's duty of loyalty claims are dismissed.

### D.  Prohibited Transaction with a Party in Interest in Violation of 29 U.S.C. § 1106(a)(1) (Count Two)

Plaintiff claims that Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1)(C) and (D) by "causing the Plan to invest in the unduly expensive investment options managed by Prudential and/or its affiliates, thereby causing the Plan to engage in transactions that Defendants knew or should have known constituted a direct or indirect furnishing of services between the Plan and the parties in interest, and/or the transfer to, or use by or for the benefit of the parties in interest, of the assets of the Plan."  SAC ¶ 116.  Defendants contend that Plaintiff's Section 1106(a) claims must be dismissed because the SAC does not plausibly allege that Defendants acted with the requisite intent to benefit parties in interest.  Prudential Br. at 23-25; Bellwether Br. at 22.[12]

Section 1106(a) governs prohibited transactions and "erect[s] a categorical bar to transactions between the plan and a 'party in interest' deemed likely to injure the plan."  *Sweda*, 923 F.3d at 327 (quoting *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012)).  This provision provides, in relevant part, as follows:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer

---

[12] Bellwether also asserts that, as an investment advisor, it did not have the power to "cause" the plan to engage in any of the allegedly prohibited transactions and argues that this provides an additional and independent basis for dismissing Plaintiff's Section 1106(a) claim against it. Bellwether Br. at 23.  Because the Court dismissed the underlying affiliated funds claims against Bellwether for impermissible group pleading and dismisses Plaintiff's Section 1106(a) claim on other grounds, it does not reach this argument.

> to, or use by or for the benefit of a party in interest, of any assets of
> the plan.

29 U.S.C. § 1106(a)(1)(C), (D).  To plausibly allege a violation of Section 1106(a)(1)(C), Plaintiff

must provide "factual allegations that support an element of intent to benefit a party in interest."

*Sweda*, 923 F.3d at 338.  To state a claim for a violation of Section 1106(a)(1)(D), Plaintiffs must

allege that "(1) a fiduciary, (2) causes a plan to engage in a transaction, (3) that uses plan assets,

(4) for the benefit of a party in interest, and (5) 'the fiduciary knows or should know that elements

three and four are satisfied.'"  *Id.* at 337 (quoting *Reich v. Compton*, 57 F.3d 270, 278 (3d Cir.

1995) (internal quotation omitted)).  The fourth element "require[s] a subjective intent to benefit a

party in interest."  *Reich*, 57 F.3d at 279.  This requisite element of intent for violations of Sections

1106(a)(1)(C) and (D) "effects the purpose of § 1106(a)(1), which is to rout out transactions *that*

*benefit [parties in interest] at the expense of participants*."  *Sweda*, 923 F.3d at 338 (emphasis

added).

The Court previously dismissed Plaintiff's 29 U.S.C. § 1106(a)(1)(C) and (D) claim.

Opinion at 26-28.  Plaintiff now cites identical allegations in the SAC, arguing that it has

adequately plead that Prudential acted to benefit its affiliates.  Opp. to Prudential Br. at 24 (citing

SAC ¶¶ 9-11).  Again, such allegations are insufficient.  Plaintiff also points to various allegations

that purportedly support an inference that the Prudential Defendants acted with subjective intent

to benefit parties in interest.  *See id.* at 25.[13]  However, these claims that the Committee ignored

underperformance, retained Prudential-affiliated funds in the Plan, and failed to satisfactorily

investigate alternative investment options do not sufficiently allege that Defendants *intended* to

benefit Prudential affiliates.  Moreover, the non-binding authorities cited by Plaintiff are

---

[13] Plaintiff appears to have incorrectly cited to SAC ¶¶ 103-108 and SAC ¶¶ 47, 66.

inapposite.  In *Acosta v. Schwab*, Civ. No. 18-3544, 2019 WL 7046916 (E.D. Pa. Dec. 20, 2019), the court considered whether commingling plan assets with company funds constituted a prohibited transaction under Section 1106(a) and found that subjective intent could be supported by plausible inference.  *Id.* at *7.  While the court did not explicitly state which facts gave rise to this inference, its finding appears to be specific to situations in which the defendants commingled plan assets with company funds.  *See id.*  There are no such allegations here.  And in *Becker v. Wells Fargo & Co.*, Civ. No. 20-2016, 2021 WL 1909632 (D. Minn. May 12, 2021), the court held that the plaintiff did not need to plead subjective intent, which is directly contrary to Third Circuit authority.  *Compare id.* at *7 *with Reich*, 57 F.3d at 279.  As a result, Plaintiff's Section 1106(a) claims are dismissed.[14]

### E.  Prohibited Transaction with a Party in Interest in Violation of 29 U.S.C. § 1106(b)(1) (Count Three)

Plaintiff also alleges that Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(b)(1) and (3) by "caus[ing] the Plan to pay investment management fees and expenses to Prudential out of Plan assets," and "receiv[ing] consideration for their own personal accounts from parties dealing with the Plan in connection with transactions involving the assets of the Plan." SAC ¶¶ 120-21.  Section 1106(b) "prohibits fiduciaries from entering into transactions with the plan tainted by conflict-of-interest and self-dealing concerns."  *Iola*, 700 F.3d at 82.  The statute provides, in relevant part, that "[a] fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account…or (3) receive any consideration for his own

---

[14] Because Plaintiff has failed to plausibly plead that the Prudential Defendants engaged in a prohibited transaction under 29 U.S.C. § 1106(a)(1), the Court need not analyze whether the exemptions to liability apply here.

personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b).

The Court previously dismissed Plaintiff's Section 1106(b) claims because "the Amended Complaint contains no allegations demonstrating that the fees paid to Prudential were anything more than 'previously bargained-for fixed compensation' intended to compensate Prudential for its work."  Opinion at 29 (quoting *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013)).  Plaintiff does not point to any new allegations in the SAC that cures this deficiency.  Thus, Count Three is dismissed.[15]

### F.  Failure to Monitor Other Fiduciaries (Count Four)

Plaintiff also brings a failure to monitor claim against Prudential and the Investment Oversight Committee.  "[W]hen a fiduciary has and exercises the power to appoint and remove plan administrators, it has the duty to monitor those appointees."  *McGowan*, 2021 WL 1399870, at *8.  "Courts have been willing to find a failure to monitor claim if the plaintiff has adequately alleged a breach of fiduciary duty claim."  *Id.* (internal citations omitted).  Because Plaintiff sufficiently pleads that Defendants breached their duty of prudence, Plaintiff's failure to monitor claim survives.  *See id.* (finding that the failure to monitor claim was plausibly plead because the complaint plead breaches of other fiduciary duties); *Luense*, 541 F. Supp. 3d at 513 (same).

### G.  Leave to Amend

Finally, Plaintiff requests a further opportunity to amend his claims to address any deficiencies should the Court dismiss any portion of the SAC.  Opp. to Prudential Br. at 31.  A

---

[15] Bellwether additionally argues that "a payment to Prudential is not a payment to Bellwether's *own account*," and therefore Plaintiff's Section 1106(b) claim against Bellwether must fail. Bellwether Br. at 24 (emphasis in original).  Because Plaintiff has not cured its deficiencies in pleading a Section 1106(b) claim, the Court does not consider this issue.

district court may deny leave to amend a complaint where the amendment would be futile or where the plaintiff was put on notice as to the deficiencies in his complaint but did not resolve them. *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Defendants argue that Plaintiff has had three attempts to state a viable claim and the benefit of "substantial discovery." Prudential Br. at 30; Bellwether Br. at 24. Thus, they contend, further amendment would be futile and dismissal with prejudice is appropriate. *Id.* With regard to the majority of Plaintiff's claims, the Court agrees. However, the Court will grant Plaintiff leave to amend his claims relating to underperformance of the Prudential Retirement Real Estate Fund, Prudential High Yield Collective Investment Trust, or Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio. The other claims dismissed herein are dismissed with prejudice, and Plaintiff will not be granted leave to amend those claims. *See Hawk Mountain LLC v. Ram Cap. Grp. LLC*, 689 F. App'x 703, 707 (3d Cir. 2017) (affirming denial of leave to amend complaint for a third time because amendment would be futile); *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (noting that "three attempts at a proper pleading is enough") (internal quotation omitted).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part.** The dismissal is without prejudice as to Plaintiff's underperformance claims and with prejudice as to the remaining dismissed claims. An appropriate Order accompanies this Opinion.

Dated: August 12, 2022

John Michael Vazquez, U.S.D.J.