<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YOUNG CHO, Individually and as Representative of a Class of Similarly Situated Persons, and on Behalf of the PRUDENTIAL EMPLOYEE SAVINGS 401(k) PLAN, | Civil Action No. 19-19886 |
| *Plaintiff*, | **OPINION** |
| v. | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, *et al.*, | |
| *Defendants*. | |

<u>John Michael Vazquez, U.S.D.J.</u>

This putative class action, brought under the Employee Retirement Income Security Act ("ERISA"), arises out of allegations that fiduciaries of the Prudential Employee Savings Plan (the "Plan") breached their fiduciary duties. Presently before the Court is Plaintiff's motion for class certification. D.E. 150. Plaintiff seeks certification of the following class:

> All participants and beneficiaries in the Prudential Employee Savings Plan at any time on or after November 5, 2013 to the present (the "Class Period" or "Relevant Time Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

D.E. 150-2. Plaintiff also seeks appointment of himself as class representative as well as appointment of Miller Shah LLP ("Miller Shah") and Carella Byrne Cecchi Olstein Brody & Agnello, P.C. ("Carella Byrne") as co-lead class counsel. *Id.* The Court reviewed the parties'

submissions[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below, Plaintiff's motion is **GRANTED**.

## I.    FACTUAL BACKGROUND[2]

Plaintiff Young Cho is a former employee of Prudential Insurance Company of America ("Prudential") and participated in the Plan until March 20, 2019.  TAC ¶ 16.  "During the Class Period, Plaintiff maintained an investment through the Plan" in various funds, including the Jennison Opportunistic Equity Collective Investment Trust."  *Id.*; D.E. 150-1 ¶ 5.  "The Plan is an 'employee pension benefit plan' within the meaning of 29 U.S.C. § 1002(2)(A) and a 'defined contribution plan' within the meaning of 29 U.S.C. § 1002(34)" and is commonly referred to as a "401(k) plan."  TAC ¶ 17.  The Plan allows eligible employees to "direct the investment of retirement assets into several select investment funds.  The available menu of investment options is curated by Defendants and, specifically, by the Investment Oversight Committee" (the "IOC").  *Id.*  The IOC retained an investment advisor for the Plan, Bellwether Consulting LLC ("Bellwether"), which provided quarterly Investment Performance Monitor reports.  *Id.* ¶ 54 n.4.  Prudential is a "plan sponsor" and "named fiduciary" for the Plan, and the IOC "is designated by the Plan Document to assist Prudential with the selection of investment funds offered for selection by Plan participants."  *Id.* ¶¶ 18-19.  In other words, Prudential delegates "responsibility for selection of the Plan's investment options to the [IOC]."  *Id.* ¶ 26.  Plaintiff states that the IOC is

---

[1] The submissions consist of Plaintiff's motion, D.E. 150, and the accompanying brief, D.E. 151 ("Br."); Defendants' opposition, D.E. 155 ("Opp."); and Plaintiff's reply, D.E. 158 ("Reply").

[2] The facts are taken from Plaintiff's Third Amended Complaint, D.E. 136 ("TAC"); the Declaration of Young Cho, D.E. 150-1; the Declaration of James C. Shah, D.E. 151-1; and the Declaration of Amanda S. Amert, D.E. 155-1.

also a "'named fiduciary' identified in the Plan Document pursuant to 29 U.S.C. § 1102(a)." *Id.* ¶ 19. Defendants Lucien Alziari, Sara Bonsteel, Gary Neubeck, Scott Sleyster, and Sharon Taylor (the "Individual Defendants") all served as members of the IOC at various times and were "delegated fiduciary authority pursuant to the Plan Document." *Id.* ¶¶ 20-25.

"The Plan is a participant-directed plan in which participants direct their retirement assets into a pre-selected menu of investment offerings consisting of several types of investments." *Id.* ¶ 27. Plaintiff claims that Defendants "severely mismanaged the Plan" by selecting imprudent investment options and by failing "to monitor all of the investments in the Plan to ensure that they provided adequate returns and were not excessively priced, as were many of the investments in the Plan lineup." *Id.* ¶ 44. The IOC and its members selected the investment options, and Plaintiff claims that they knew or should have known "that better performing, lower-cost, comparable alternative investments were readily available as compared to the challenged investments[.]" *Id.* ¶ 47. Plaintiff asserts that all Defendants were fiduciaries of the Plan and violated ERISA Section 404, 29 U.S.C. § 1104, "by failing to act solely in the interest of the Plan and its participants and beneficiaries and failing to exercise the required care, skill, prudence, and diligence in investing the assets of the Plan and disclosing the fees charged to the participants." *Id.* ¶ 49. Plaintiff brings this action on behalf of the Plan pursuant to 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(2). *Id.* ¶ 50.

Plaintiff claims that

> [i]n addition to unreasonably excessive fees charged by several of the investments available to Plan participants, several of the most expensive funds also produced poor returns relative to their respective benchmarks and other similar alternative funds, rendering these objectively imprudent investments, and their selection and retention by Defendants[] a breach of their fiduciary duty.

*Id.* ¶ 51.  Plaintiff challenges five funds specifically: (1) the Prudential Retirement Real Estate Fund (*id.* ¶¶ 54-60); (2) the Prudential High Yield Collective Investment Trust (*id.* ¶¶ 61-68); (3) the Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio (*id.* ¶¶ 69-75); (4) the Jennison Opportunistic Equity Collective Investment Trust (*id.* ¶¶ 76-80); and (5) the Wells Capital International Bond Institutional Select Fund (*id.* ¶¶ 81-83).  Of these challenged funds, Plaintiff Cho only invested in the Jennison Opportunistic Equity Collective Investment Trust.  D.E. 150-1 ¶ 5; D.E. 155-1 at 64 (Tr. 85:1-8).

Plaintiff also alleges that Defendants breached their fiduciary duties by implementing an "optional asset allocation and proprietary tool" named "GoalMaker."  *Id.* ¶ 85.  GoalMaker "allocates a participant's retirement funds among certain Plan investment options according to the participant's age and risk tolerance."  *Id.*  "GoalMaker creates model portfolios from investments already in a plan's investment menu.  These portfolios, based on a participant's time horizon, are broken down into Conservative, Moderate, and Aggressive."  *Id.*  GoalMaker has a third-party manager, Meisrow Financial Investment Management, Inc. ("Meisrow"), which creates the portfolios from "the limited universe of investment options" in the Plan's investment menu.  *Id.* ¶ 86.  Plaintiff claims that GoalMaker "has advanced the interests of Prudential by disproportionately allocating participant funds to investments managed by Prudential or its affiliates."  *Id.* ¶ 88.  Additionally, the Conservative GoalMaker portfolio is the Plan's Qualified Default Investment Alternative ("QDIA").  *Id.* ¶ 89.  "[I]f participants do not direct where their assets should be invested, all contributions are automatically invested in the QDIA."  *Id.*  Plaintiff claims that if the IOC had weighed the benefits of GoalMaker against a suite of target date funds, which are "by far the most widely utilized QDIA in defined contribution plans," they would "inevitably have come to the conclusion that GoalMaker's inferior returns were costing Plan

participants significant growth in their retirement assets, resulting in losses of millions of dollars." *Id.* ¶ 90.  Plaintiff adds that "[t]he [IOC] undertook no such analysis, however, because the GoalMaker service directs millions of participant dollars into Prudential products."  *Id.*

Plaintiff asserts that GoalMaker's "ability to generate substantial returns is hampered by the profusion of Prudential products, including the PESP Fixed Rate Fund . . . a proprietary stable value fund which assets are held in Prudential's general account."  *Id.* ¶ 93.  The PESP Fixed Rate Fund "occupies, at all time horizons, between a 6% and 36% position in the Plan's QDIA."  *Id.* This "substantial concentration," according to Plaintiff, "is a considerable drag on the Plan's performance" and "is problematic for the Plan's overall ability to grow participants' retirement savings."  *Id.*  Plaintiff explains that "Defendants were incentivized to steer participant dollars into the [PSEP Fixed Rate Fund]" and "directed all participants to the GoalMaker and [the PSEP Fixed Rate Fund] to enrich Prudential."  *Id.* ¶ 95.  Plaintiff agrees that he did not use GoalMaker and was not personally harmed by the Defendants' implementation of GoalMaker.  D.E. 155-1 at 67-68 (Tr. 88:23-89:3).

Count I of Plaintiff's Third Amended Complaint alleges breach of fiduciary duty under ERISA against all Defendants.  *Id.* ¶¶ 106-109.  Count II alleges that Prudential breached its fiduciary duty to monitor the IOC, the Individual Defendants, and Bellwether, and that the IOC breached its fiduciary duty to monitor the Individual Defendants and Bellwether.  *Id.* ¶¶ 110-17.

The Court previously issued Opinions addressing motions to dismiss the Amended Complaint and Second Amended Complaint.  D.E. 102, D.E. 128.  Plaintiff filed the TAC on September 12, 2022, and Defendants answered.  D.E. 139.  The parties completed fact discovery and continue to engage in expert discovery.  The present motion seeks class certification under Fed. R. Civ. P. 23(a) and 23(b)(1).  D.E. 150.  Plaintiff also seeks appointment as class

representative, and to have Plaintiff's counsel, Miller Shah and Carella Byrne, appointed as co-lead class counsel.  *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).  "[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."  *Id.* (citing Fed. R. Civ. P. 23(a)-(b)).  A party seeking class certification must first show that the proposed class satisfies the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  These four prongs are often referred to as numerosity, commonality, typicality, and adequacy.

Plaintiffs also must show that proposed class satisfies Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590.  Here, Plaintiff argues that the putative class meets the requirements of Rule 23(b)(1).  Under Rule 23(b)(1) plaintiffs must show the following:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  The decision to certify a class or classes is left to the discretion of the court.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009).  "[T]he requirements set out in Rule 23 are not mere pleading rules."  *Marcus*, 687 F.3d at 591 (alteration in original) (quoting *In re Hydrogen Peroxide*, 552 F.3d at 316).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Id.*  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient."  *In re Hydrogen Peroxide*, 552 F.3d at 318 (citation omitted).

The Third Circuit has emphasized that "'[a]ctual, not presumed, conformance' with the Rule 23 requirements is essential."  *Id.* at 326 (alterations in original) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)).  "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth."  *Marcus*, 687 F.3d at 591 (citation omitted).  This "rigorous analysis" requires a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."  *Id.* (citation and internal quotation marks omitted).  Therefore, a district court "may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'"  *In re Hydrogen Peroxide*, 552 F.3d at 316 (quoting *Newton*, 259 F.3d at 167).

### III.    ANALYSIS

#### A.  Rule 23(a) Requirements

##### 1.  Numerosity

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No single magic number exists" to meet the numerosity requirement.  *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) (citation and internal quotation marks omitted).  "However, the Third Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'"  *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).  Plaintiff submitted the Plan's "Form 5500s" for 2014 through 2018, which indicate that the Plan had more than 40,000 participants with account balances throughout those years.  D.E. 152-2; D.E. 152-3; D.E. 152-4; D.E. 152-5; D.E. 152-6. Defendants do not dispute that the putative class satisfies the numerosity requirement, Opp. at 7, and the Court finds that it is satisfied.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009) (finding that numerosity was "plainly satisfied . . . since ERISA 502(a)(2) claims are brought on behalf of a Plan, and over 10,000 people were invested in the Schering-Plough Stock Fund").

##### 2.  Commonality

"Rule 23(a)(2) requires Plaintiffs to demonstrate that 'there are questions of law or fact common to the class.'"  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 487 (3d Cir. 2018) (quoting Fed. R. Civ. P. 23(a)(2)).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted).  However, Rule 23(a)(2)'s

"language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation, internal quotation marks and alteration omitted)). "A complaint's mere recital of questions that happen to be shared by class members" is insufficient; instead, "'[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'" *Mielo*, 897 F.3d at 487 (quoting *Dukes*, 564 U.S. at 349-50). "What matters . . . is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). In other words, the class claims "must depend upon a common contention" whereby "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiff argues that this action

> presents many . . . common questions of law and fact, applicable to all members of the Class, including: (1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties as a result of their practices for monitoring of Plan investments and designating the Plan's QDIA; (3) the scope and reasonableness of Defendants' reliance on the investment advisor and asset allocation providers they retained on behalf of the Plan; (4) whether the Plan and its participants and beneficiaries were injured by any breaches; and (5) whether the Class is entitled to damages and the appropriate measure of such damages.

Br. at 19.

In ERISA cases, questions such as "whether defendants were fiduciaries . . . whether defendants breached their duties to the Plan . . . and whether the Plan suffered losses as a result of defendants' breaches" render the commonality requirement "clearly satisfied." *In re Schering Plough Corp. Erisa Litig.*, 589 F.3d at 596-97; *see also In re Schering Plough Corp. Enhance*

9

*ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *3 (D.N.J. May 31, 2012) ("[T]he Complaint alleges breach of fiduciary duties owed under ERISA, the determination of which involves issues of law and fact that are identical for all Settlement Class members. The commonality requirement is thus satisfied."). This case involves those same questions, and the answers to those questions will serve to drive resolution of this case. Thus, the commonality requirement is met. *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 331426, at *7 (D.N.J. Feb. 10, 2009) (finding commonality "easily met" because "there are a number of questions of law or fact common to all class members, including: 1) whether Defendants were fiduciaries; 2) whether Defendants breached their fiduciary duties to Plaintiffs; 3) whether the benefit plans were injured by such breaches; and 4) whether the class is entitled to damages."); *see also Karg v. Transamerica Corp.*, No. 18-134, 2020 WL 3400199, at *2 (N.D. Iowa Mar. 25, 2020) ("ERISA actions have sufficient commonality when class members share questions of whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result." (citation and internal quotation marks omitted)); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y. 2017) ("[P]laintiffs have established commonality by identifying at least two questions that are capable of classwide resolution: whether defendants improperly favored proprietary funds in order to benefit Citigroup at the expense of Plan participants . . . and whether defendants failed to prudently and loyally monitor the Plan's investments[.]").

In opposition, Defendant relies on *Dukes*, but that case is distinguishable. In *Dukes*, the Court was "presented with one of the most expansive class actions ever . . . comprising about one and a half million plaintiffs, current and former female employees" of Wal-Mart who alleged that "the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title

VII by discriminating against women."  564 U.S. at 342.  The *Dukes* Court noted that "[t]he crux of this case is commonality" and that plaintiffs "wish to sue about literally millions of employment decisions at once" which were made by numerous supervisors around the country.  *Id.* at 352.  The Supreme Court reasoned that "without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*"  *Id.* (emphases in original).  The Court then approvingly cited Chief Judge Kozinski's dissent from the Ninth Circuit's underlying decision, which stated that the putative class members

> "held a multitude of jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed. . . . They have little in common but their sex and this lawsuit."

*Id.* at 359-60 (quoting 603 F.3d 571, 652 (9th Cir. 2010) (Kozinski, C.J., dissenting)).  The Court in *Dukes* found that plaintiffs had not established commonality.  *Id.* at 359.

Here, by comparison, Plaintiff's ERISA § 502(a)(2) claim is brought on behalf of the Plan and its participants to recover the Plan's losses.  *See* 29 U.S.C. § 1109(a); 29 U.S.C. § 1132(a)(2).  Such a representative claim does not involve distinct conduct being directed at distinct plaintiffs and will not require multitudes of substantive, different liability determinations.  Instead, this matter presents class-wide questions—capable of resolution through uniform answers—of whether Defendants were fiduciaries and whether they breached their fiduciary duties to the Plan.  The putative class members here are alleged to have been "subjected to the same kind of illegal conduct by the same [parties]"—*i.e.*, the Defendants' breach of their fiduciary duties to the Plan— and were allegedly "harmed in the same way, albeit to potentially different extents."  *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 399 (3d Cir. 2015) (distinguishing

11

*Dukes*, and noting that "[w]hile some individualized determinations may be necessary to completely resolve the claims of each putative class member in this case, those are not the focus of the commonality inquiry"). The questions of Defendants' fiduciary duties to the Plan and its participants, and whether such duties were breached, are "common as to all of the class members" and thus satisfy the commonality requirement. *Id.* (citation omitted); *see also Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 631 (E.D. Pa. 2021), *aff'd*, 36 F.4th 124 (3d Cir. 2022) (finding that commonality was satisfied in an ERISA breach of fiduciary duty action where plaintiffs alleged "the Fiduciaries breached their duties to the Plan," in part through their selection of the menu of investment options).

*In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410 (3d Cir. 2016), provides a useful comparison. In that case, retired National Football League ("NFL") players sued the NFL alleging that it "failed to inform them of and protect them from the risks of concussions in football." *Id.* at 420. The District Court concluded, among other common questions, that "common legal questions, including the 'nature and extent of any duty owed to [r]etired [p]layers by the NFL Parties'" satisfied Rule 23(a)(2), and the Third Circuit affirmed. *Id.* at 427. The Third Circuit found *Dukes* distinguishable because "[e]ven if the players' particular injuries are unique, their negligence and fraud claims still depend on the same common questions regarding the NFL's conduct." *Id.* at 427. Here too, the claims depend on the answers to common questions about the Defendants and their conduct, including whether Defendants were fiduciaries under ERISA and whether they breached their fiduciary duties to the Plan.

Defendants appear to argue that individualized questions regarding the *amount of loss* caused to each putative class member precludes class certification. Opp. at 11-12. While individual questions may exist about the extent of each class member's injury based upon the funds

they invested in and the timing of those investments, those inquiries do not defeat commonality. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) ("[A]n inability to calculate damages on a classwide basis will not, on its own, bar certification." (citation omitted)); *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 3780555, at *23 (D.N.J. Aug. 30, 2012) ("When a plaintiff seeks relief on behalf of the plan under ERISA . . . the focus at the class certification stage is not on whether each individual plan participant has been injured or stands to benefit from the change. The focus, instead, is on whether the Plan itself has been injured through a lack of prudence by the fiduciary.").

### 3.  Typicality

Turning to typicality, it "demands that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Newton*, 259 F.3d at 182 (quoting Fed. R. Civ. P. 23(a)(3)).  In other words, the lead plaintiff's claims must be "comparably central" to the claims of the absent parties.  *Id.* at 183.  This ensures that "the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Id.* at 182-83 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).

The Third Circuit has stated that the typicality requirement

> include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

The typicality requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Newton*, 259 F.3d at 183 (citation and internal quotation marks omitted). However, all plaintiffs are not required to share identical factual circumstances—the requirement only mandates that a named plaintiff's individual circumstances cannot be "markedly different" from the other class members. *Id.* (citation omitted). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Id.* at 183-84 (citation omitted). For example, "a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Id.* at 184 (citing *Baby Neal*, 43 F.3d at 63). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (citation and internal quotation marks omitted). In other words, "[c]omplete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 598 (citation omitted).

Plaintiff argues that he "easily satisfies" the typicality requirement because he was a participant in the Plan during the Class Period and, "like all members of the Class, was injured as a result of Defendants' flawed process for monitoring investments and designating an appropriate QDIA." Brief at 22-23. Cho and each putative class member share the common allegation that Defendants acted imprudently and breached their fiduciary duties in managing the Plan—*i.e.*, the claims of each putative class member arise from the same conduct by the Defendants. This overarching legal theory satisfies Rule 23(a)(3)'s typicality requirement, "even though additional

fund-specific proof of objective imprudence may be required to support the claims of some class members." *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 135 (3d Cir. 2022); *Furstenau*, 2004 WL 5582592, at *3 ("[P]laintiff's claims are typical because he still has to prove the common issues . . . of whether defendants were fiduciaries and whether they breached their fiduciary duties.").

Defendants argue that Cho "did not utilize GoalMaker" and thus "has no monetary stake in the outcome of his GoalMaker claim." Opp. at 13. Defendants further argue that Cho's claims are not typical of the class because "he never invested in the majority of the challenged investments." Opp. at 13. These arguments, as they pertain to typicality, have been rejected by the Third Circuit in cases alleging breach of fiduciary duties under ERISA. In *Boley*, the Circuit noted that while "allowing class representatives to bring claims relating to funds in which they did not invest may result in some inefficiency at the damages stage," such concerns do not necessarily bar certification of a Rule 23(b)(1) class. *Boley*, 36 F.4th at 136. "Rather, they more closely resemble concerns that might relate to the predominance and superiority requirements for (b)(3) class than they do the typicality requirements of Rule 23(a)." *Id.*; *Newton*, 259 F.3d at 184 ("[W]hether the class representatives' claims prove the claims of the entire class" is "more properly considered and relevant under the predominance and superiority analysis."). Plaintiff here does not seek certification under Rule 23(b)(3), Brief at 30-35, D.E. 150-2, and thus need not establish predominance and superiority. *See Boley*, 36 F.4th at 136 ("ERISA 'breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604)). Thus, Defendants' concerns do not impact the Court's decision on typicality, and Rule 23(a)(3) is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "It tests the qualifications of class counsel and the class representatives." *In re Nat'l Football League*, 821 F.3d at 428. To satisfy the adequacy element, a plaintiff must show that the proposed class representative "has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Sapir v. Averback*, No. 14-07331, 2015 WL 858283, at *3 (D.N.J. Feb. 26, 2015) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). "Whether a party adequately represents a class depends on all the circumstances of the particular case." *Id.*

Defendants do not dispute the qualifications of the proposed class counsel. Miller Shah and Carella Byrne have competently represented Plaintiff thus far through motion practice and discovery. The Court also accepts counsels' representations as to their experience in class action litigation, and ERISA class actions specifically. D.E. 151-1 ¶¶ 12-14. Miller Shah and Carella Byrne satisfy the adequacy requirement.

Defendants dispute whether Cho, the proposed class representative, satisfies the adequacy requirement. First, Defendants argue that Cho's "lack of knowledge surrounding facts relevant to this case" render him an inadequate class representative. Opp. at 15. However, a mere "minimal degree of knowledge about the litigation is adequate" to satisfy Rule 23(a)(4). *In re Nat'l Football League*, 821 F.3d at 430 (citation omitted). Cho's Declaration indicates that he has a basic

16

understanding of the nature of this litigation, consults with his attorneys, and understands that any recovery "will be apportioned among Plan participants based on losses to their Plan accounts." D.E. 150-1 ¶¶ 4-8.  Cho also indicates that in actively participating in the litigation, he has "reviewed the allegations . . . provided information to [his] counsel . . . provided documents and assisted [his] counsel in discovery matters, sat for a deposition, and maintained regular communication with [his] counsel in order to stay informed about the case."  *Id.* ¶ 9.  Plaintiff further expresses his commitment "to seeing this litigation through to the end" and his willingness "to undertake any responsibilities required of [him] as a class representative[.]"  *Id.* ¶ 10.  Plaintiff satisfies the low bar of having a "minimal degree of knowledge about the litigation."

Defendants also argue that Cho is an inadequate representative because he has "interests antagonistic to the proposed class," has "incentives to focus on the one challenged fund he actually invested in—the Jennison Opportunistic Equity CIT—over the four other funds he challenges," and because he "did not utilize GoalMaker, [he] has less incentive to pursue his GoalMaker claim." Opp. at 14.  "The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *In re Nat'l Football League*, 821 F.3d at 431 (citation and internal quotation marks omitted).  Rule 23(a)(4) thus "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted).  "A conflict must be fundamental to violate Rule 23(a)(4)."  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (citation and internal quotation marks omitted).  This aspect of the adequacy inquiry "tend[s] to merge" with the typicality requirement "because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Beck v. Maximus, Inc.*, 457

F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem Prods.*, 521 U.S. at 626 n.20).  Plaintiff argues that his interests are "tightly aligned with all other members of the proposed Class" because he "seeks to enforce the duties that Defendants owed to the Plan and to recover damages and equitable relief due."  Br. at 27.  Plaintiff further states that "each member of the proposed Class, just like Plaintiff, has a similar interest in recovering losses suffered by the Plan as a result of Defendants' conduct."  Br. at 28.

The Court disagrees with Defendants' statement that "Cho has interests *antagonistic* to the proposed class."  Opp. at 14 (emphasis added).  Defendants have not pointed to any zero-sum dynamic or otherwise opposing interests between Cho and the other proposed class members, nor does the Court perceive any.  Defendants further argue, in relatively conclusory fashion, that Cho has less incentive to focus on the GoalMaker claim and on the funds he did not invest in.  Opp. at 14.  Defendant failed to cite any authority indicating that these differing incentives, assuming they exist, make Cho an inadequate representative.  And while the burden is on Plaintiff to prove that class certification is proper by a preponderance of the evidence, "the law does not demand a plaintiff to prove a negative."  *Duncan v. Governor of V.I.*, 48 F.4th 195, 210 (3d Cir. 2022).  Instead of Cho having an antagonistic interest, Defendants appear to actually assert that Cho does not have the motive to pursue all aspects of the Plan and GoalMaker diligently.

In *Boley*, the Third Circuit addressed the same dynamic of named plaintiffs who "did not invest in all . . . of the challenged funds" and thus would arguably "have no incentive to focus their litigation efforts on the objective imprudence of offering the funds in which they did not invest."  36 F.4th at 133.  While the only issue raised on appeal was typicality, and the Third Circuit accordingly limited its analysis, the court upheld class certification.  *Id.* at 130 n.6.  After noting that the typicality and adequacy requirements "tend to merge," the court stated that it did "not find

[defendant's] incentive argument persuasive." *Id.* at 133-34. The *Boley* court noted that "[e]ach participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—[defendant's] breach of its fiduciary duty under ERISA in managing the Plan's investment options." *Id.* at 134. The fact that the named plaintiffs invested in some of the funds and had "a monetary stake in proving [defendant's] alleged imprudence" was sufficient. *Id.* at 135. The Third Circuit found that typicality was satisfied "even though additional fund-specific proof of objective imprudence may be required to support the claims of some class members." *Id.*; *see also Baby Neal*, 43 F.3d at 58 (discussing typicality and noting that "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice" (citing *Gen. Tel. Co.*, 457 U.S. at 157-59)).

The Court finds that the Third Circuit's reasoning applies equally to the adequacy requirement, which "tend[s] to merge" with the typicality requirement. *Beck*, 457 F.3d at 296. Here, Plaintiff's interests and those of the proposed class are aligned towards proving that the Defendants acted imprudently in their management of the Plan, which is sufficient to satisfy Rule 23(a)(4). *See Leber*, 323 F.R.D. at 164 ("[E]ven though [the named plaintiffs] only have a clear financial stake in proving the claims of class members who invested in the Citi Institutional Liquid Reserves Fund, there is no fundamental conflict between their interests and those of class members who invested in other funds."); *In re Nortel Networks Corp. ERISA Litig.*, No. 03-01537, 2009 WL 3294827, at *10-12 (M.D. Tenn. Sept. 2, 2009) ("[B]ecause 'prudence' in breach of fiduciary duty claims is defined only in terms of the defendant's conduct, and because Plaintiffs seek to recover losses on behalf of the Plan, Plaintiffs' individual investment variance does not defeat adequacy. . . . [T]he proposed class members and representatives have a unified interest in seeking

recovery to the Plan and advancing the same claims based on a common set of facts.  Plaintiffs

have demonstrated adequacy of representation."); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 536

(E.D. Pa. 2010) (noting that in "an action on behalf of the Plan, . . . the intended focus is on whether

defendants breached their fiduciary duties," and typicality and adequacy were satisfied because

"all class members have a shared interest in establishing defendants' liability that vastly outweighs

any divergence of interests that arise from differing dates of purchase and sale").

Also instructive is Third Circuit precedent holding that a plaintiff has Article III standing

to bring breach of fiduciary duty claims under ERISA as to funds he did not personally invest in

if the challenged funds were all imprudent as a result of the same conduct by the defendants—*i.e.*,

if the injuries as to all funds are causally related.[3]  *See Boley*, 36 F.4th at 132 ("Article III does not

prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly

imprudent due to the same decisions or courses of conduct."); *Sweda v. Univ. of Pa.*, 923 F.3d 320,

331 (3d Cir. 2019) (holding that plaintiff had standing to bring claims alleging imprudence as to

funds he did not invest in where Plaintiff alleged that the imprudence was the result of a flawed

selection and managing process); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th

Cir. 2009) (noting that a plaintiff may seek relief under ERISA that "sweeps beyond his own

injury" and finding that the plaintiff had standing "for the simple reason that [he] has alleged injury

in fact that is causally related to the conduct he seeks to challenge on behalf of the Plan").  If a

plaintiff has a sufficient stake in litigating the imprudence of funds he did not invest in—in Article

III terms—then that would at least suggest that his interests and those of the other class members

---

[3] The Court considered these cases in its prior Opinions addressing the motions to dismiss for lack of standing.  D.E. 102, 128.  The Court held that Plaintiff has standing to challenge the funds in which he did not personally invest and to challenge GoalMaker because each claim is "causally related to the conduct that allegedly caused Plaintiff's personal injury."  D.E. 128 at 12; D.E. 102 at 9.

are sufficiently aligned to make him an adequate representative for those claims as well.  At the very least, Defendant has not pointed to any fundamental conflicts which would require a different finding.  Rule 23(a)(4) is satisfied.[4]

**B. Rule 23(b)(1)**

Having determined that the proposed class meets the requirements of Rule 23(a), the Court now considers whether Plaintiff has satisfied the requirements of Rule 23(b).  Plaintiff seeks certification under Rule 23(b)(1), which permits certification where

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).  "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (collecting cases).

The proposed class is appropriate for certification under Rule 23(b)(1)(A) and (B).  Under Rule 23(b)(1)(A), multiple actions alleging that the conduct at issue here was a breach of Defendants' fiduciary duties could lead to inconsistent results and thus incompatible standards for

---

[4] The Court notes that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Thus, district courts are required to reassess decisions about class certification as a case develops "to ensure that the class satisfies Rule 23."  *Johnson v. GEICO Cas. Co.*, 672 F. App'x 150, 157 (3d Cir. 2016) (citation omitted).  If Defendants' concerns prove to be warranted, the Court will reassess the propriety of proceeding with the class as defined herein.

the Defendants' conduct moving forward. *In re Merck*, 2009 WL 331426, at *12 (finding certification under Rule 23(b)(1)(A) proper because "[p]ursuing separate actions [for ERISA fiduciary duty claims] would raise a substantial risk that different courts would reach inconsistent conclusions about the standards of conduct for the fiduciaries, and that different courts might order conflicting injunctive or other remedies"); *see also Boley*, 337 F.R.D. at 638-39 ("The Participants—on behalf of the Plan—generally allege the Fiduciaries mismanaged the Plan's investments, failed to monitor the decision-making process regarding investments, and allowed participants to be charged excessive fees.  If we allowed separate actions to proceed, the Fiduciaries could be subject to varying and incompatible standards of conduct and liability.  Class certification is appropriate under Rule 23(b)(1)(A)."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010) ("[W]here, as here, the allegations in the Complaint implicate misconduct in the management [of] the Plan[s] as a whole, disparate lawsuits by individual participants would raise the specter of 'varying adjudications.'" (citation and internal quotation marks omitted)).

Further, Plaintiff's claims are "brought on behalf of the Plan and alleg[e] breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member," and thus "Rule 23(b)(1)(B) is clearly satisfied."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604-05; *Boley*, 337 F.R.D. at 639 ("Judges in [the District of New Jersey] and elsewhere have . . . certified classes under Rule 23(b)(1)(B) in analogous ERISA breach of fiduciary duty actions brought on behalf of plans.").  Defendants appear to argue that certification under Rule 23(b)(1)(B) is improper because this is not a "limited fund" case.  Opp. at 17-18.  But "Rule 23(b)(1) is not exclusively applied in limited fund classes."  *In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 467 (E.D. Pa. 2000); *In re Merck*, 2009 WL 331426, at *10 ("Limited fund cases are but one species of the genus of Rule 23(b)(1)(B) cases.").  And indeed, the Advisory Committee

Note specifically contemplates certification under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries[.]"    Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment.    As Plaintiff meets the requirements of Rule 23(a) and 23(b)(1), the Court will certify the proposed class.

## IV.    APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

Plaintiff seeks to have Young Cho appointed as class representative.    As stated above, Plaintiff meets the adequacy requirement of Rule 23(a)(4).    For the same reasons, the Court will appoint Cho as class representative.

Further, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Doing so requires the court to consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).    In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."    Fed. R. Civ. P. 23(g)(1)(B).    Defendants have not raised any objection to the appointment of Miller Shah and Carella Byrne as co-lead class counsel.    Having seen counsels' efforts thus far in the litigation and having reviewed Miller Shah's representations as to their experience in litigating class actions, and ERISA class actions specifically, D.E. 151-1 ¶¶ 12-14, the Court is satisfied that both firms meet the requirements of Rule 23(g).    The Court thus appoints Miller Shah and Carella Byrne as co-lead class counsel.

## V.    CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiff's motion for class certification and appointment of a class representative and counsel, D.E. 150, is **GRANTED**. Because the Court partially relied on documents that were filed under seal to decide the motion, this Opinion shall initially be filed under seal.  By September 13, 2023, the parties shall inform the Court, via a letter filed on the docket, if any portion of the Opinion should remain under seal and the legal basis for doing so.  If the Court does not receive any such submission, this Opinion will be unsealed on September 14, 2023.  An appropriate Order accompanies this Opinion.

Dated: August 29, 2023

John Michael Vazquez, U.S.D.J.